IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

**CHOON'S DESIGN LLC**,
a Michigan limited liability company,

    Plaintiff

v.

**ZENACON, LLC**,
a Florida limited liability company, and
**STEVEN VERONA**, an individual,

    Defendants

---

**ZENACON, LLC**,
a Florida limited liability company,

    Third Party Plaintiff

v.

**CHEONG CHOON NG**, an individual,

    Third Party Defendant.

---

Case No. 2:13-cv-13568-PJD-RSW

Hon. Patrick J. Duggan

**PLAINTIFF'S RESPONSE TO NON-PARTY TOYS "R" US'
MOTION TO QUASH DISCOVERY**

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................... ii

I.   Background .......................................................................................................1

    A.   The Rainbow Loom® and the Toys "R" Us' Knockoff ..........................................1

    B.   The Stay In The Co-Pending Case .......................................................................3

II.  The Requested Information Is Highly Relevant ...................................................4

III. The Specific Requests Are Not Improper .............................................................6

IV.  Closing ..............................................................................................................7

# TABLE OF AUTHORITIES

**Cases**

*DeGregorio v. Phillips Elecs. N. Am. Corp.*, 2007 U.S. Dist. LEXIS 94753 (N.D. Ill. 2007)....5, 6

*Graham v. John Deere Co. of Kan. City*, 383 U.S. 1 (U.S. 1966)...................................................5

*Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207 (Fed. Cir. 1987) ......4, 5, 6

Toys "R" Us, which is not a party in the instant lawsuit, has moved to quash properly served discovery. For the reasons set forth below, the Court should deny Toys "R" Us' Motion to Quash.

To make its argument, Toys "R" Us tries to slow the instant lawsuit in view of a co-pending lawsuit, Choon's Design LLC v. LaRose Industries, LLC, Case No: 4:13-CV-13569, which is pending before the Honorable Terrance G. Berg. Judge Berg has stayed that lawsuit and its discovery. However, Plaintiff, Choon's Design LLC ("Choon's") has requested discovery from Toys "R" Us in *this* lawsuit seeking information relevant to *this* lawsuit.

## I.   BACKGROUND

### A.   The Rainbow Loom® and the Toys "R" Us' Knockoff

Plaintiff, Choon's Design LLC ("Choon's"), was founded by Cheong Choon Ng. Mr. Ng invented, perhaps, the most popular toy in recent years. He filed for a patent and in July of 2013 received U.S. Patent No. 8,485,565 ("the '565 patent"), copy attached as Exhibit A. Choon's sells looms covered by the '565 patent as the Rainbow Loom®.

The Rainbow Loom® forms a "Brunnian link" from a closed loop, or link, doubled over itself for capturing another closed loop to form a chain. Pin bars are utilized to provide an area for linking the links. The process is shown, for example, in Figures 14A-14C of the '565 patent. Bracelets are formed from the chain by being connected by C-clips, such as shown in Figures 15 and 16 of the '565 patent.

The early sales of the Rainbow Loom® were largely through independent toy stores. However, Choon's eventually negotiated a Supply Agreement with Michael's Art and Craft Supply stores.

The product flew off the shelves. Mr. Ng has been featured on the Today Show

1

(http://www.today.com/style/new-silly-bandz-rainbow-loom-bracelets-hit-kids-6C10920802) and his story has been included in a number of other publications. Copies of just a few of the many articles published, such as those from The Wall Street Journal, New York Times and Crain's Detroit Business, are attached as Exhibit B.

Choon's has enjoyed Rainbow Loom® sales totaling over five million kits. In addition, it has licensed a loom called Wonder Loom™. Sales of that loom approach one million kits.

With success, came copiers. The Michael's Supply Agreement limited Mr. Ng from selling Rainbow Loom® to other large retailers. Attached as Exhibit C is an e-mail chain between Mr. Ng and a Mr. Jeff Osnato. Mr. Osnato is a buyer for Toys "R" Us. Toys "R" Us was desperate to have the Rainbow Loom® and has approached Mr. Ng to inquire whether it could also sell the Rainbow Loom®.

As is clear from the e-mail chain, due to the Agreement with Michael's, Mr. Ng had to turn Toys "R" Us down. Toys "R" Us' desperation extended to inquiring whether its FAO Schwartz Toy Store chain might allow it to end run the Supply Agreement. This evident desperation is compelling evidence of the popularity of the Rainbow Loom®. Choon's believes that requested discovery will clearly show that Toys "R" Us saw itself forced to gain a loom to sell, as the Rainbow Loom® had become so wildly successful. This would serve as evidence that the patent was properly issued and valid.

Toys "R" Us, faced with having to come up with a loom to sell, went to LaRose, and enticed LaRose to begin manufacturing the infringing Cra-Z-Loom. Choon's does not know the volume of sales of the Cra-Z-Loom through Toys "R" Us, but it is likely also in the millions of units. As an example, Exhibit D is a Toys "R" Us ad for the hottest toys of 2013. The hottest toys include the infringing Cra-Z-Loom, alongside such unquestionable monster hits as Xbox

One and Big Hugs Elmo. Further, as shown in Exhibit E, Toys "R" Us began arranging classes where it taught children, who are the typical users of these looms, how to infringe Choon's '565 patent. All of these actions gave rise to the co-pending litigation before Judge Berg.

Defendants in this lawsuit, Zenacon, Steven Verona, and Geeky Baby (collectively, "Defendants") began manufacturing and selling another infringing loom called the Fun Loom. Those actions led to the instant lawsuit. Part of Exhibit B is a Wall Street Journal article from September 11, 2013. The WSJ article reports on both lawsuits.

Toys "R" Us, rather than scaling back its infringing actions, at some point began selling the Fun Loom product in addition to the Cra-Z-Loom product. Choon's is unsure whether Toys "R" Us is buying the Fun Loom from Defendants or from some company licensed by Defendants. However, Toys "R" Us can hardly say with a straight face it did not anticipate being involved in this lawsuit at some level given its disregard for Choon's patent rights.

    **B.**    **The Stay In The Co-Pending Case**

Judge Berg has stayed the co-pending case until February 10 so that the parties can engage in mediation. In staying the case, Judge Berg also prohibited any discovery from being filed. The Order in that case does not stay any discovery in other lawsuits. In fact, the stay in the co-pending case should be lifted before the hearing on this motion.

While Defendants argue that Choon's is attempting an end run of the stay to gain discovery, this is not true. The discovery requested of Toys "R" Us in *this* lawsuit is relevant to the issues of patent validity in *this* lawsuit.

Toys "R" Us almost certainly has internal documents where it evaluated the marketability of the Rainbow Loom® and came to the conclusion that it needed to infringe the patent, and sell a competing loom. Again, the email chain and its ads imply this point. That will be compelling

evidence that the '565 patent is valid, and is valuable in *this* lawsuit.

Defendants' arguments confuse the way that such information will typically be produced in federal litigation. As an example, Choon's does not expect that Toys "R" Us will produce any such commercial evidence except under an appropriate protective order. That protective order will limit the use of the evidence to the particular lawsuit.

Thus, even if Toys "R" Us produces similar evidence in the co-pending lawsuit, that evidence could not be brought into *this* lawsuit. It would be under a protective order in the co-pending lawsuit and could not be used here.

As such, the discovery sought by Choon's is not an attempt to circumvent or "end run" the Order in the co-pending lawsuit.

In fact, if the co-pending lawsuit does not settle with the mediation (currently scheduled for February 7) that discovery would also soon be due in the co-pending lawsuit. There would be no undue burden on Toys "R" Us to produce the information again as it should be largely repetitive.

Also, Toys "R" Us knew it was stepping into federal litigation both when it began sales of the Cra-Z-Loom and when it also added the sales of the Fun Loom. In Exhibit C, Mr. Ng specifically told the Toys "R" Us buyer that he held the '565 patent.

What burden is there on one of the world's largest toy retailer to produce evidence of the decisions it made, and the commercial success it has enjoyed, when it made a considered decision to violate the intellectual property rights of a start-up company?

## II. The Requested Information Is Highly Relevant

In one applicable case, the Court of Appeals for the Federal Circuit reversed a district court that quashed a third party subpoena. In particular, in *Truswal Systems Corp. v. Hydro-Air*

4

*Engineering, Inc.*, 813 F.2d 1207, 1208 (Fed. Cir. 1987), a district court quashed a discovery request made by Truswal of third party Hydro-Air. The third party argued the discovery of commercial information to show that a patent would not have been obvious was unduly burdensome. *Id.* at 1208. Further, the third party argued that the evidence of its sales, which were not part of the lawsuit in which the discovery was sought, had no relevance. *Id.*

The Federal Circuit reversed, quickly pointing out the relevance of sales of *any* company of a product that would come under a patent. In particular, the Federal Circuit explained that "[s]ince at least *Graham v. John Deere*[1], the commercial success of a patented invention is clearly important." *Id.* at 1212 (internal citation omitted). The Federal Circuit explained that the third party's sales are evidence of commercial success, which is relevant to whether a patent is non-obvious. *Id.* The Federal Circuit otherwise held that the third party's motion to quash "reflects an inappropriate disregard of this court's precedents." *Id.*

As to concerns with regard to the confidentiality of the information to be produced, the Federal Circuit noted that it would come under a protective order. *Id.* at 1211.

When faced with similar facts to those in the present case, one district court applied *Truswal* and declined to quash discovery requests served on a non-party. *See DeGregorio v. Phillips Elecs. N. Am. Corp.*, 2007 U.S. Dist. LEXIS 94753 (N.D. Ill. 2007). In *DeGregorio*, the plaintiff argued that the discovery sought from the third-party was relevant because "the customers' sales and profits are relevant to show that the patented device is non-obvious." *Id.*

Ruling for the plaintiff, the court held that commercial success of a third party was

---

1     *Graham v. John Deere* is a seminal patent case from the U.S. Supreme Court. *See Graham v. John Deere Co. of Kan. City*, 383 U.S. 1 (U.S. 1966). In *Graham*, the court explained that considerations such as "as commercial success, long felt but unsolved needs, failure of others, etc." can show non-obviousness. *Id.* at 17. The *Graham* case remains highly relevant today.

relevant, because "[s]imply put, the concept is that if the device has experienced commercial success, one may infer that it fulfilled a long felt need and was not, therefore, obvious." *Id.* The court went on to explain the need for third-party discovery, highlighting that the plaintiff "does not know how quickly defendants' retail customers have been able to sell the device, what they have been able to charge for it (or their profits), and whether increased demand for the product has affected the price of the device over time to its ultimate customers, the consumers." *Id.* Citing *Truswal*, the court noted that "the United States Court of Appeals for the Federal Circuit has recognized that sales information from non-parties may be relevant on the issue of commercial success." *Id.*

In view of *Truswal* and *DeGregorio*, the evidence requested from Toys "R" Us is—without question—relevant to the instant lawsuit.

Toys "R" Us, a worldwide major toy retailer, made a calculated decision to go to market with products it knew would bring it into a patent lawsuit. Given the e-mail chain, there is surely internal evaluation of the marketability of the product in Toys "R" Us. This will be extremely persuasive evidence of the non-obviousness and commercial success.

While Toys "R" Us argues that the Defendants in this case will have similar information, that is not at all true. Defendants in this case might have some information with regard to sales of the Fun Loom, but they will have no information with regard to sales of the Cra-Z-Loom. Moreover, they will have no information about the evaluation Toys "R" Us made to enter into the market despite the patent.

### III.     The Specific Requests Are Not Improper

Toys "R" Us also argues that discovery requests in the co-pending lawsuit closely tracks the discovery requests issued here. It is unclear what point Toys "R" Us is trying to make with

6

this comparison, however. The discovery requests in both cases are intended to gather similar information, namely, information with regard to the commercial success of the loom products.

Toys "R" Us, which did not initially object to any one of the requests as being overreaching, now pulls out several which it feels are overly broad. First, the proper avenue for discussing whether any such request was improperly broad would have been to bring it to Choon's' counsel, rather than to shoehorn it into this Motion to Quash.

However, while Choon's is willing to discuss these issues with Toys "R" Us, the specifically mentioned requests are not improper. As an example, Toys "R" Us' Profit and Loss Statements regarding loom products go to the profitability of the products and show commercial success.

Any novelty, prior art, state of the art, validity, infringement or other search relating to the '565 patent would show the desperation that Toys "R" Us might have had in that it proceeded despite its knowledge of the '565 patent. Here again, this shows commercial success.

Organizational charts and directories for Toys "R" Us are important in evaluating the names that may be included on e-mails. As an example, we have previously mentioned a buyer, a Mr. Osnato from Toys "R" Us. Such a chart might tell us where this gentleman is within Toys "R" Us. Again, the higher up the people who are making decisions to infringe the patents, the stronger the evidence of non-obviousness.

And any Board of Director or committee meetings that refer or relate to loom products, are most certainly relevant to commercial success. If the Board of Directors of Toys "R" Us is discussing loom products, that is quite compelling evidence of the commercial success.

## IV. CLOSING

In view of the above and, in particular, the clear Court of Appeals for the Federal Circuit

7

precedence, Choon's asks that this Court deny Toys "R" Us' Motion to Quash and order Toys "R" Us to promptly proceed with proper production of the requested discovery.

                                                            Respectfully submitted

Dated: January 31, 2014                  **CARLSON, GASKEY & OLDS, P.C.**

                                                          /s/ Brian S. Tobin
                                                          Theodore W. Olds, III (P42004)
                                                          John M. Siragusa (P62573)
                                                         Brian S. Tobin (P67621)
                                                          400 W. Maple, Suite 350
                                                          Birmingham, Michigan 48009
                                                          Telephone: (248) 988-8360
                                                          Email: tolds@cgolaw.com
                                                                        jsiragusa@cgolaw.com
                                                                        btobin@cgolaw.com

# CERTIFICATE OF SERVICE

I certify that on January 31, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

**CARLSON, GASKEY & OLDS, P.C.**

/s/ Brian S. Tobin
Brian S. Tobin (P67621)
400 W. Maple, Suite 350
Birmingham, Michigan  48009
Telephone:  (248) 988-8360
Email: btobin@cgolaw.com