# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

**CHOON'S DESIGN LLC**,
a Michigan limited liability company,

      Plaintiff

v.

**ZENACON, LLC,**
a Florida limited liability company,
**STEVEN VERONA**, an individual, and
**GEEKY BABY, LLC,**
a Florida limited liability company,
**IDEA VILLAGE PRODUCTS CORP.**,
a New Jersey corporation

      Defendants

Case No. 2:13-cv-13568-LJM-RSW

Hon. Laurie J. Michelson

**ZENACON, LLC**,
a Florida limited liability company, and
**GEEKY BABY, LLC,**
a Florida limited liability company,

      Third Party Plaintiffs

v.

**CHEONG CHOON NG**, an individual,

      Third Party Defendant.

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**I.     INTRODUCTION**

1

Plaintiff brings this Motion to the Court some seventeen (17) months after filing its lawsuit, claiming that it will *now* suffer irreparable harm if Defendants are not enjoined from selling their competitor product. The products in question are fad products designed for children, and the height of the fad has admittedly passed. Nonetheless, despite having never before sought injunctive relief in this matter, despite the fact that the popularity of all products involved has faded, and despite letting two Christmas shopping seasons without making a motion for an injunction, Plaintiff does so now. Not only is the relief sought inappropriate due to Plaintiff's delay, but Plaintiff otherwise fails to establish a likelihood of success on the merits, or for that matter a harm that cannot be addressed through monetary damages. In fact, although Plaintiff bears the burden of proof, little in the way of actual evidence is offered in support of any of its claims. Defendants therefore ask that Plaintiff's Motion for Preliminary Injunction be DENIED.

## II.   LEGAL STANDARDS

The test to be applied for ruling upon a motion of this kind has been stated as follows:

> (1) whether the moving party is likely to succeed on the merits; (2) whether the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) whether the balance of hardships tips in favor of the moving party or the opponent; and (4) whether the grant of preliminary injunctive relief will adversely affect the public interest. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994).
>
> *High Tech Med. Instr., Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1553 (Fed. Cir. 1995). In considering these factors, the Plaintiff is "the party that bears the burden of showing an entitlement to the extraordinary relief of a preliminary injunction." *Advanced Commun. Design, Inc. v. Premier Retail Networks, Inc.,* 46 F. Appx. 964 (Fed. Cir. 2002).

## III.   DISCUSSION

### A.   Plaintiff Has Not Proven a Substantial Likelihood of Success on the Merits

In its Brief, Plaintiff relies solely upon Claim 9 and Claim 14 of the 565 patent. Plaintiff begins by contending that because these claims survived the first IPR initiated by LaRose, that there is no question that said claims are valid. Nonetheless, as Plaintiff knows, until this month there was pending a second IPR applicable to these same claims. Plaintiff settled those proceedings before the USPTO had an opportunity to rule. Moreover, the responding Defendants indeed contest the validity of the patent claims in question. To this end, Defendants hereby attach their invalidity chart with regard to the 565 patent as **Exhibit 1** hereto. Said exhibit lists significant prior art, as well as the details of Defendants invalidity contentions with regard to this patent. Thus, there is indeed a question as to validity.

With regard to infringement, Defendants will address claims 9 and 14 in turn. For reference, Defendants' Non-Infringement Chart is attached hereto as **Exhibit 2**.

Claim 9:

The primary point of contention as to this claim is whether Plaintiff's claims require the pins of the loom to be separate from the base. As acknowledged in Plaintiff's Brief, Plaintiff's patent application discloses a loom with a plurality of pin bars which are separate from the base and can be reconfigured on said base (Doc. # 115, p. 11), while the Fun Loom has no separate pin bars, but rather pins which are a part of one molded item (*Id.*, at p. 7). Not only is the separateness of the pin bars from the base the invention for which Plaintiff sought a patent, it is truly the only unique aspect of the invention which provided Plaintiff with an argument for patentability. As set forth in **Exhibit 2**, there is much prior art (and has been for a very long time) with regard to looms with pins affixed to a base.

An examination of the claims makes clear that invention protected, if valid, is a loom with separate pin bars capable of reconfiguration. Plaintiff concedes that Claim 9 depends from Claim 1. Claim 1 contemplates a loom consisting of "a base; and at least one pin bar supported on the

base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins." The semi-colon between the base and the pin bars is significant, and indicates that they are indeed two separate things. This is in significant contrast to the Fun Loom, which has no such "pin bars," but instead has pins which are a part of one molded item. Even the term "plurality of pins" indicates that the number of pins can in fact change, which of course cannot occur with the Fun Loom. Moreover, the "pin bars" in question *include* this "plurality of pins." Again, with the Fun Loom, there is no such pin bar that includes a plurality of pins. There is one molded item with a set number of pins. Given that Claim 9 is derived from Claim 1, and Claim 1 requires separate pin bars, Claim 9 is not infringed by Fun Loom.

Plaintiff seeks to separate Claim 9 from Claim 2. The reason for this is clear. There is no doubt that Claim 2 requires pin bars separate from the base. Consider the language of the claim: "The kit as recited in claim 1, wherein the pin bar and the base including corresponding mating features for securing the pin bar to the base." Thus, a connection between Claims 9 and 2 would be fatal to Plaintiff's case. In fact, Plaintiff goes so far as to use Claim 2 as the basis of a purported argument for claim differentiation. A better understanding of the claims, however, is that Claim 2 is the specific embodiment of the connection of the separate pin bars and base contemplated by Claim 1, as opposed to describing a wholly different device. The language of Claim 2, quoted above, even refers specifically to "the kit, as contemplated in claim 1." That Claim 2 further describes the attachment of separate items is a much more logical construction than the assumption, asserted by Plaintiff, that what it really meant to do was describe two completely different products without clearly saying so.

<u>Claim 14</u>:

4

Plaintiff's method claim (Claim 14, depending upon Claims 12 and 13) fails for several reasons. Although Plaintiff asserts that "Defendants perform all steps in the United States," (Doc. # 115, p. 7), Plaintiff can prove neither that Defendant performs all of the steps of its method claim, nor that all such steps occur in the United States. Plaintiff begins this argument with a substantial leap from what the patent actually describes. Claim 14 does not describe a manufacturing method, it describes a method for use of a product. Indeed, the steps of the independent claim 12 are introduced as follows: "A method of creating a linked item comprising the steps of …" This language leaves no doubt that the method claimed is about using the loom product to produce a linked item, not manufacturing the loom product itself. Nonetheless, Plaintiff treats the claim as one for a manufacturing method so that it can then claim that the Defendants perform the step of "supporting at least one pin bar including a plurality of pins to a base to define a desired relative special relationship between at least two adjacent pins," when that language has always referred to the configuration of pins by the user of the product. This leap is required because Plaintiff's patent application was always about a device involving a separate base and pin bars which the customer could configure. Given that Fun Loom is not such a product, it does not infringe. In order to attempt to salvage its claim, Plaintiff has to re-write Claim 14 as a manufacturing method, which it is clearly not due at least to the fact that it refers to the interaction of the elastic bands, the hook tool and the pins of the loom.  Construing the claim in this way is a strained construction indeed, and demonstrates Plaintiff's willingness to depart from the proper interpretation of claims.

Even if this leap were allowed, Plaintiff cannot prevail. With regard to the location at which the steps take place, Plaintiff acknowledges that the Fun Loom is manufactured in China. Plaintiff then asserts, without proof, that Defendants direct the manufacturer "to arrange the pins

and other structures as indicated." (*Id.*) Plaintiff then goes on to admit that "Choon's is unable to prove this currently." (*Id.*) Although this inability to prove this fact is blamed upon a lack of discovery from Defendant Idea Village, this assertion assumes that different discovery responses from Idea Village would have produced proof of what Plaintiff cannot currently prove. As stated above, it is Plaintiff's burden of proof to establish a substantial likelihood of success on the merits. The assertions of counsel alone are not sufficient evidence with which to meet this burden. For instance, in *Advanced Commun. Design, Inc. v. Premier Retail Networks, Inc.,* 46 F. Appx. 964 (Fed. Cir. 2002), a case relied upon by Plaintiff, the Federal Circuit held that, as to certain claims, the Plaintiff's request for injunction failed because its "evidence of infringement consists of nothing more than a conclusory assertion by its CEO Scibora and an equally conclusory letter by its patent counsel." *Id.* at 979.

Moreover, Plaintiff has not proven, and cannot prove, that the steps outlined in its method claim are all performed by Defendants. After manufacture (about which Plaintiff's proof is wanting), it is the customer that engages in the process of "assembling…elastic bands across…pins" and "using a hook tool…to extend below the top most elastic band and grasp a bottom elastic band with the hook tool" using the product as set forth in Claim 14 to actually produce "a linked item." The notion that Defendants are the entities that finish the process because videos exist of the process being completed,[1] fails to reflect the reality of what occurs. The product is manufactured by one party and used by another. Once Plaintiff strained to claim that the arrangement of pins was not the use of the product but rather the manufacture of the product, it necessarily drove a wedge between what person or entity completed the various steps of the claimed method.

---

[1] Also, it is worthy of note that Plaintiff offers no evidence with regard to these videos, who made them, who is shown, where the steps shown took place, their relationship to Defendants, etc.

Similarly, Plaintiff cannot show that the purchaser or user of Defendants' product completes all steps of the method. This is because the user is completely incapable of arranging pins, since the Defendants' pins are fixed in place when the user receives the product. In order to move Defendants' pins, the customer must break Defendants' loom.

In addition to non-infringement, all claims of the '565 patent have a cloud of unenforceability hanging over them due to the alleged inequitable conduct Plaintiffs engaged in during the prosecution of the application. As is shown in the attached letter dated June 26, 2013 (**Exhibit 3**), Defendants' attorney communicated the existence of relevant prior art to the attorneys for Plaintiffs before the '565 patent was granted (on July 16, 2013). None of those patents was cited by Plaintiffs to the United States Patent and Trademark Office, as required by the duty of candor under 37 C.F.R. §1.56. Defendants were not permitted to cite documents to the PTO while the application was pending. Thus, Plaintiffs' deliberate withholding of relevant prior art references will result in a finding that Plaintiffs acted inequitably during prosecution, thereby rendering the '565 patent unenforceable.

For all of these reasons, Plaintiff has failed to meet its burden of proving a substantial likelihood of success on the merits.

### B. There is No Irreparable Harm

#### 1. No Presumption Arises in Plaintiff's Favor

The responding Defendants contend that Plaintiff has failed to demonstrate a likelihood of success on the merits, and that said failure should conclude this motion. Nevertheless, should the Court determine that Plaintiff has shown such a likelihood of success, no presumption of irreparable harm arises unless there has been a " 'clear showing' of likely infringement and that the asserted patent claims will withstand the accused infringer's challenges." *Advanced*

7

*Commun.*, 46 Fed. Appx., at 982. Defendants submit that, in light of the arguments above, there has been no such "clear showing."

      2.  If Any Such Presumption Exists, It Is Rebutted By Plaintiff's Delay

Plaintiff contends that the Federal Circuit "found that a twelve month delay between a patent issue and the time plaintiff sued defendant and sought injunctive relief was not enough to overcome the presumption of irreparable harm when the patent owner had a good explanation. (14-15). *Citing Advanced Commun., Design, Inc. v. Premier Retail Networks, Inc.*, 46 F. Appx. 964 (Fed. Cir. 2002). This is not an accurate representation of the *Advanced* case.

Although the Federal Circuit did find that the passage of time did not rebut a presumption of irreparable harm as to one of the three claims at issue, the timeframe asserted by Plaintiff is inaccurate. In fact, the Court held that "the more accurate gauge of the delay here is three or four months, not the "12 months" that Premier emphasizes." *Advanced*, 46 Fed. Appx., at 984.

Here, Plaintiff was aware of the alleged infringement at least by June 14, 2013, at which time its counsel sent a letter to Defendant Zenacon, LLC. The lawsuit was filed on August 19, 2013 and waivers of service were provided on October 15, 2013. Plaintiff did not file its Motion for Preliminary Injunction until January 15, 2015. Thus, this motion was filed nineteen (19) months after it become aware of the alleged infringement, seventeen months (17) after filing its lawsuit, and fifteen (15) months after gaining service of its original complaint.

By contrast, the Motion for Preliminary Injunction in *Advanced* was filed October 17, 2001, which was approximately (4) four months after suit was filed on June 1, 2001, two (2) months after service was obtained on August 21, 2001, (*Id.*, at 968) and five (5) months after "Advanced [] learned for certain of the Interactive Network's alleged infringement in May,

8

2001" (*Id.*, at 984). Thus, the delay in this case was more than a year longer than the delay in the *Advanced* case.

What is most remarkable about this delay is the nature of the product. Every competitor in this market realizes that these are fad products, and that the high point of the fad has passed. Although Plaintiff filed its lawsuit in August of 2013, it chose to let the 2013 Christmas shopping season pass without moving for an injunction. Plaintiff then had an entire year to seek such an injunction prior to the 2014 Christmas shopping season, but failed to do so. Now, Plaintiff asks this Court to overlook this delay, and instead rule that irreparable harm will befall Plaintiff unless its competitors are enjoined from selling competing fad products two Christmas seasons after the fad's highpoint. If there ever was a time for this Motion, that time has long since passed.

3. Plaintiff Has Shown No "Good Reason" For its Delay

Not only is the delay in this case well out of line with the precedent cited by Plaintiff, but it is also unclear what the alleged "good reason" is for the delay. This point receives little attention in Plaintiff's Brief. First of all, Plaintiff mentions that "the progress of this lawsuit has been delayed numerous times." (Doc. # 115, p. 15). In particular, Plaintiff cites to the motions for a stay and for a protective order pending the LaRose IPR. Although the stay was denied, Plaintiff points to the existence of a protective order from February 27, 2014 until the stay was denied on June 26, 2014.

There are several reasons this argument fails to establish sufficient cause for Plaintiff's delay in filing this motion: (1) the protective order was entered over six (6) months after the filing of the lawsuit, and after the 2013 Christmas shopping season had passed, (2) the protective order stayed discovery only, and did not prevent Plaintiff from seeking a preliminary injunction,

(3) the protective order issue was "resolved in favor of a stay" by the parties (Doc. # 47), and in any event, discovery was only stalled for four (4) months of the now seventeen (17) months that this case has been pending. Quite simply, Plaintiff has pointed to nothing in the litigation of this case that has prevented it from seeking injunctive relief much earlier if indeed it faced irreparable harm.

In addition, Plaintiff states that "it is certainly conventional wisdom that a patent that had not been tested for validity is not ripe for preliminary injunction." (Doc. # 115, p. 15). This is stated without further explanation or case citation. In fact, it is directly contradicted by the *Advanced* case, which is the only case upon which Plaintiff relies on the issue of delay. In *Advanced*, the Plaintiff filed suit, and then promptly moved for preliminary injunction. We presume that Plaintiff is referring to the LaRose IPR when it states that moving for a preliminary injunction would not have been prudent to seek an injunction "last fall or winter." (Doc. # 115, p. 15). Certainly the *Advanced* plaintiff did not await the determination of any such proceeding before seeking injunctive relief. Indeed, with a fad product such as this one, time should be considered of the essence. Plaintiff was not in any manner required to wait three-and-a-half (3.5) months from the filing of suit until LaRose filed its first IPR on December 3, 2013. After that IPR concluded on June 14, 2014, Plaintiff was in no matter required to wait an additional two-and-a-half (2.5) months for LaRose to file its second IPR on September 2, 2014. Nonetheless, it did so. What is even more striking is that the LaRose IPRs did not prevent Plaintiff from seeking injunctive relief in the LaRose case, which Plaintiff did shortly after the second IPR was filed.[2]

In sum, this argument asks the Court to rule that the substantial delay in this case is excused because Plaintiff decided to wait voluntarily to seek injunctive relief, or pre-judged that

---

[2] Though Plaintiff seeks to rely upon statements made by the presiding Judge in that case from the bench, the Motion was never ruled upon prior to the settlement and dismissal of the case.

10

it would not have been successful. If the potential harm was as irreparable as Plaintiff contends, it would not have waited to try to stop it.

### 4. Plaintiff Has Proven No Irreparable Harm

Plaintiff has failed to meet its burden of proof to establish that it will suffer irreparable harm if its Motion is not granted. Perhaps most fundamentally, Plaintiff's contentions of irreparable harm are wholly lacking in terms of evidence. That is, the Court is left with mere assertions of client and counsel. This is clear both from the Declaration of Mr. Ng and the Brief filed by his counsel. As cited above, the *Advanced* court has specifically held that such conclusory statements are not sufficient evidence upon which to base a preliminary injunction. 46 Fed. Appx. at 979.

At Paragraph 6 of his Declaration, Mr. Ng contends that Defendants have been lowering their process, and that this has frustrated his "efforts to maintain [his] desired price." Plaintiff's Brief makes similar assertions, citing to certain internet printouts showing that the price of Defendant's product has decreased over time. First of all, this assertion alleges a damage which, if proven, could be made whole with monetary damages, thus undercutting Plaintiff's need for an injunction. Second, it is a bare assertion with no support. What evidence is there that Plaintiff cannot maintain his desired price? To what extent? How is this Court to determine that any such failure to maintain price, if any, is the result of anything Defendants have done as opposed to market conditions? Is it not logical that process might drop, as Mr. Ng asserts, after the Christmas season when demand for toys decreases? Couldn't prices be falling because the fad has faded, and retailers need to be able to move inventory? Is it Defendants who have cut prices, or is the retailers themselves?

At Paragraph 8 of Mr. Choon's Declaration, he asserts that Defendant's product is "frustrating [his] efforts to introduce [his products] into new retailers." This assertion is used in the Brief as a means to argue irreparable harm by attempting to bring this case within the scope of an unfair competition case from the Northern District of New York. But where is the proof that Defendant's product is preventing Plaintiff for getting his new products into new retailers? Where is the evidence that retailers have refused his products for this reason? Are we to assume without proof that his products are otherwise desirable to these unknown retailers, and that they would be tremendously successful if not for Defendant's product? We are left with nothing more than the assertions of Plaintiff and its counsel.

### C. The Balance of Equities Favors the Responding Defendants

Notably, Plaintiff's entire argument with regard to the balance of the equities pertains to Idea Village, not to these Defendants. As Plaintiff and its counsel know, the smallest fish in this dispute are Verona, Zenacon and Geeky Baby. They have one product. Although the demand for this product, and all competing products, is definitely fading, preventing the sale of FunLoom, either directly or by license to Idea Village, would be devastating to these Defendants. Every argument Plaintiff makes with regard to the relative size and diversification of the parties in this case is more applicable to Verona, Zenacon and Geeky Baby than it is to Plaintiff.

### D. The Public Interest Weighs Against the Injunction

Just as there is a public interest in protection of patent rights, there is a public interest in protecting fair competition. The responding Defendants designed and sold what they believe to be a better, and very different loom. Plaintiff's patent claims are only meaningfully distinguished

from products that have been around for years by the attachment and arrangement of separate pins to a base. This aspect distinguishes Plaintiff's claims from Defendants' product as well.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Preliminary Injunction should be DENIED.

This the 28th day of January, 2015.

                                        */s/ Haytham Faraj*
Haytham Faraj (P72581)
The Law Office of Haytham Faraj PLLC
6 Parklane Boulevard, Suite 530
Dearborn, Michigan 48126
Telephone: (888)809 1877
haytham@faraj.com

and

Sam McGee, NC State Bar No. 25343
Tin Fulton Walker & Owen
301 East Park Avenue
Charlotte, NC 28203
Telephone: (704) 338-1220
Facsimile: (704) 338-1312
smcgee@tinfulton.com

## **CERTIFICATE OF SERVICE**

   I certify that on January 28, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

                */s/ Haytham Faraj*_____
                Haytham Faraj (P72581)
                The Law Office of Haytham Faraj PLLC
                6 Parklane Boulevard, Suite 530
                Dearborn, Michigan 48126
                Telephone: (888)809 1877
                haytham@faraj.com