**Asserted Claims of Asserted Patent U.S. 8,485,565**
**in view of**

**Invalidated Claims 1, 5-8, and 10-11 of the '565 Patent**

**J.R. Stark & J.R. Smith, "Classical Loop-in-Loop Chains and Their Derivatives" (1997),**
**Chapman & Hall ("Loop-in-Loop").**

**E. Kenneway, "The Rubber Band Book," (1977), Arrow Books Ltd. ("Rubber Band Book")**

**Wool Novelty Co., Inc., "Loops & Laces Instructions," 1990, Wool Novelty Co., Inc. ("Loops Instructions")**

**Instructions for making Finger Weave Products from Weaving Loops,**
**(dated between March 15, 2005 and August 21, 2006), obtained August 15, 2014 from:**
**https://web.archive.org/web/http://www.makingfriends.com. ("Making Friends")**

**T. Coleman & P. Llanes, "Hipster Librarian's Guide to Teen Craft Projects", 2009,**
**American Librarian Association ("Hipster")**

**T.S. Hiler, "Necklace Out of Rubberbands How Fun is That," August 1, 2009, obtained August 15, 2014**
**from: http://www.hobbyhub360.com/index.php/necklace-out-of-rubberbands-how-fun-is-that-27591/**
**("Hiler")**

**E. Pritchard, "How to make a bracelet out of Weaving Loops or Hair Ties – YouTube" September 27, 2009,**
**obtained August 15, 2014 from: http://www.youtube.com/watch?v=a5iNZs3nbm4 ("Pritchard YouTube")**

**Takacas, Sarah, "How to Make Rubber Band Bracelets", 15 April 2009, obtained August 15, 2014 from:**
**https://www.youtube.com/watch?v=e0k762PJ-D8 ("Takacs YouTube")**

**Wikihow, "How to Create a Bracelet out of Mini Rubberbands", April 14, 2008, obtained August 15, 2014 from: https://web.archive.org/web/20080414202608/http://www.wikihow.com/Create-a-Bracelet-out-of-Mini-Rubberbands ("Wikihow")**

**Wool Novelty Co., Inc. products , "Loops and Loom" (1985), "Deluxe Metal Hand Weaving Loom & Hook", "Loom and Hook" (1985), "Weaving Loops and Loom" ("WN Looms")**

**Peter Pan Playthings product, "Doodles - Colored Pictures Drawn with Rubber Bands!" (1960s) ("Doodles")**

**Ursula Woerner, "Extra & Ordinary," November 6, 2006, obtained August 15, 2014 from: https://web.archive.org/web/20061106165612/http://www.mindwhatyouwear.com/rubberbands.html ("Woerner")**

**U.S. Patent No. 5,426,788 to Meltzer ("Meltzer")**

**U.S. Patent No. D592,537 to Darnell ("Darnell")**

**U.S. Patent No. 7,040,120 to Hunter ("Hunter")**

**U.S. Patent No. 8,418,434 to Carruth et al. ("Carruth")**

**U.S. Patent No. 5,231,742 to Macbain ("Macbain")**

As a result of the Adverse Judgment entered by the USPTO during the LaRose IPR which invalidated claims 1, 5-8, and 10-11 of the '565 Patent ("Invalidated Claims"), Choon is estopped from "taking action inconsistent with the Adverse Judgment" and all of the Asserted Claims of the '565 Patent are invalid as they are not patentably distinct from the invalidated claims.

Loop-in-Loop was published in 1997, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Rubber Band Book was published in 1977, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Loops Instructions was published in 1990, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Making Friends was published between March 15, 2005 and August 21, 2006, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Hipster was published in 2009, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Hiler was published August 1, 2009, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Pritchard YouTube was published September 27, 2009, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Tackacs YouTube was published April 15, 2009, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

WN Looms were on sale or publicly used at least as early as 1985, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Wikihow was published April 14, 2008, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Doodles were on sale or publicly used at least as early as the 1960s, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

Woerner was published November 6, 2006, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

U.S. Patent No. 5,231,742 to Macbain ("Macbain") issued on August 3, 1993 and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

U.S. Patent No. 5,426,788 to Meltzer ("Meltzer") issued on June 27, 1995 and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

U.S. Patent No. D592,537 to Darnell ("Darnell") issued on May 19, 2009 and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

U.S. Patent No. 7,040,120 to Hunter ("Hunter") issued on May 9, 2006 and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (b) and 103 (a).

U.S. Patent No. 8,418,434 to Carruth et al. ("Carruth") was filed on July 6, 2011, and has an effective filing date of July 7, 2010 based on U.S. Provisional Pat. App. Ser. No. 61/361,990, and therefore qualifies as prior art to U.S. Pat. No. 8,485,565 ("the '565 Patent") under at least 35 U.S.C. §§ 102(a) and (e) and 103 (a).

As described in detail below, the Invalidated Claims and/or Macbain anticipate and/or render obvious all Asserted Claims of the '565 Patent. To the extent it is found that the Invalidated Claims and/or Macbain do not expressly disclose, and/or did not practice, certain limitations in the Asserted Claims, such limitations are inherent. Moreover, to the extent it is found that the Invalidated Claims and/or Macbain do not anticipate any of the Asserted Claims, the respective prior art references render them obvious, either alone or in combination with other prior art identified by Defendants in these Invalidity Contentions.

To the extent that the patent owner asserts that any feature of any accused product satisfies any of the following claim limitations and such a feature is also present in the prior art discussed below, the presence and assertions in this chart pertaining to such feature should not be taken as an admission that the claim language, as properly construed, is satisfied by the feature.  Rather, such material is only included in this chart to show that any such feature was known in the prior art.

| Asserted Claims 9 and 12-18 | |
|---|---|
| [9.0] The kit as recited in claim 1, | Claim 9 is not patentably distinct from the Invalidated Claims of the '565 Patent: *See* the chart for claims 1 and 9 below. |
| [1.0] A kit for creating an item consisting of a series of links, the device comprising: | The Invalidated Claims disclosed a kit for creating an item consisting of a series of links; *see, e.g.,*: <br><br> Invalidated Claims of the '565 Patent: 1. A kit for creating an item consisting of a series of links. |
| [1.1] a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins. | The Invalidated Claims disclosed a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins; *see, e.g.,*: <br><br> Invalidated Claims of the '565 Patent: <br><br> 1. A kit for creating an item consisting of a series of links, the device comprising: a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins. |
| [9.1] including a clip for securing ends of the series of links together. | The Invalidated Claims in view of the knowledge of a person of ordinary skill in the art, the teachings of the Invalidated Claims themselves, or in combination with the teachings of other prior art identified by Defendants in these Invalidity Contentions, |

taught the kit as recited in claim 1, including a clip for securing ends of the series of links together to one of ordinary skill in the art.  *See, e.g.,*:

Invalidated Claims of the '565 Patent:

1. A kit for creating an item consisting of a series of links, the device comprising: a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins.

Claim 10: "The kit as recited in claim 1, wherein the series of links comprises a series of elastic bands."

Claim 11. "The kit as recited in claim 1, wherein the series of links comprise a series of Brunnian links."

The Invalidated Claims in view of the knowledge of a person of ordinary skill in the art, the teachings of the Invalidated Claims themselves, or in combination with the teachings of other prior art identified by Defendants in these Invalidity Contentions, taught including a clip for securing ends of the series of links together to one of ordinary skill in the art.  In comparing '565 Patent claim 9 and invalid '565 Patent claim 1, the only difference between the language of the two claims is that claim 9 recites a "a clip for securing ends" of the "series of links" recited in invalid claim 1 (indicated in italics in the foregoing chart).  Additionally, invalid claims 10 and 11 of the '565 Patent recite that the "series of links" could be "a series of elastic bands", including elastic bands assembled as a "series of Brunnian links."  In the '218 IPR, the USPTO construed the claim term "Brunnian links" in claim 11 of the '565 Patent as "a link formed from a closed loop doubled over itself to capture another closed loop to form a chain."  Thus, a linked item consisting of a series of elastic bands assembled as a series of links formed from closed loops each doubled

over itself to capture another closed loop to form a chain is now in the public domain and is also prior art to claim 9.

Adding a clip to the prior art kit of the Invalidated Claims does not make the resulting combination patentably distinct.  Indeed, using a clip to secure the ends of a series of elastic bands or a series of Brunnian links recited in the Invalidated Claims was well known to a person ordinary skill in the relevant art as evidenced by Meltzer; Darnel; Carruth; Loop-in-Loop; Loops Instructions; WikiHow; and/or Crafster.  Meltzer; Darnel; Carruth; Loop-in-Loop; Loops Instructions; WikiHow and Crafster each disclose a "clip" or device for gripping or holding things together, as correctly construed by the USPTO during the LaRose IPR.

It would have been obvious to one of ordinary skill in the art in view of the Invalidated Claims, or in combination with the teachings of other prior art identified by Defendants in these Invalidity Contentions, to include a clip for securing ends of the series of links formed with the kit of the Invalidated Claims.  One of ordinary skill in the art would have been motivated to make the modification or combination for multiple reasons.  For example, Meltzer discloses a connecting member 24 for connecting ends of a series of links 22A-22H. Meltzer at Col. 4, ln. 56 – col. 5, ln. 4, and FIGS. 4-6 to hold ends of a series of links to secure the ends together.



Alternatively, Darnell discloses a circular connecting member for securing ends of a series of links, *See, e.g.,*



**FIG. 1**

Carruth discloses locking means 150 for securing ends of a series of Brunnian links; *See, e.g.:*



FIG. 4

*See, also e.g.,* Darnell at FIGS. 1-12; Carruth at FIGS. 2 and 4; *see also* Carruth col. 2, ln. 45-54, stating: "[t]he first end 101 and second end 102 can be connected together via a locking means 150 [which] may be one or more of any securing or locking devices well known to one of ordinary skill in the art . . . e.g., a clip mechanism").

Alternatively, Loop-in-Loop discloses that chains formed from these "Brunnian links", also known in the art as "loop-in-loop chains", have been known and created for over five centuries, having been "the predominant chain type. . .from the early Bronze Age in the Middle East." Loop-in-Loop at 1-3. Loop-in-loop chains were prominent in "Troy II, from prepalatial Crete," in Egypt "around 2100 B.C.", in Etruscan, Hellenistic and Roman times, in the Byzantine and Medieval periods in Europe, in India for over a thousand years, returned again to prominence in the Nineteenth Century, and remain well-known today. *Id.* at 2-3. Loop-in-Loop further discloses that clasps for securing ends of Brunnian links of a chain, including the "single-wire hook-and-eye", "wrapped single-wire hook-and-eye",

and "toggle clasp" are well known and can be found "on many ancient pieces." *Id. at* 152-157, 161-152.

Alternatively, Loops Instructions discloses several clips for securing ends of a series of elastic band Brunnian links including barrettes, banana clips and safety pins. *See, e.g.,* Loops Instructions at 6-7 ("Headbands & Belts", "Tied Loopy Barrettes", "Tied Loopy Banana Clip," "Threaded Pony Tail Scrunch."

As further evidenced by Craftster and WikiHow, it was well known to a person of ordinary skill, and even children, to use a clip, such as a paper clip, or another rubber band, yarn, string, thread or "anything" to secure the ends of a chain of elastic rubber bands together to form a necklace or bracelet once the chain reached its desired length. *See, e.g.,* Craftster at ("When you arer ready to end the bracelet, take the 2 loops in your final rubber band and stick the outside point of the paper clip through them.  Now your bracelet is complete."); WikiHow at 2 ("You could tie the ends together with another rubber band, the ends of the first and last rubber band, or take yarn, string, thread, anything, and tie them together like that, too.")

Thus Meltzer, Darnell, Carruth, Loop-in-Loop, Loops Instructions, Craftster and WikiHow each provided a teaching, suggestion, or motivation that would have led one of ordinary skill to modify the kit of the Invalidated Claims to include a clip, or to combine the kit of the Invalidated Claims with the clips of Meltzer, Darnell, Carruth, Loop-in-Loop, Loops Instructions, Craftster and WikiHow or the teachings of other prior art identified by Defendants in these Invalidity Contentions to arrive at the claimed invention.  Furthermore, making the combination or modification would require nothing more than common sense, making a mere design choice among known techniques having known and intended results, and combining prior art elements according to known methods to yield predictable results.

Since the subject matter of the Invalidated Claims and each of these references are

| | |
|---|---|
| | directed to the same technical field (i.e., devices for creating items consisting of a series of links together), a skilled person would have looked to provide a well-known clip as taught by Meltzer, Darnell, Carruth, Loop-in-Loop, Loops Instructions, Craftster or WikiHow, in the prior art kit of the Invalidated Claims to secure ends of the series of Brunnian links in a known manner to achieve a known result (e.g. to make the series of links wearable by the person who created the series as a bracelet or necklace and prevent the series of links from unraveling as they are not knotted together) as making the combination would require nothing more than common sense, and combining prior art elements according to known methods to yield known results. |
| | |
| [12.0] A method of creating a linked item comprising the steps of: | Claim 12 is not patentably distinct from the Invalidated Claims of the '565 Patent: *See* the chart for claim 12 below.<br><br>The Invalidated Claims disclosed a kit for creating an item consisting of a series of links; *see, e.g.,*:<br><br>Invalidated Claims of the '565 Patent:<br><br>1. A kit for creating an item consisting of a series of links.<br>10. [The kit as recited in claim 1,] wherein the series of links comprises a series of elastic bands."<br><br>11. [The kit as recited in claim 1,] wherein the series of links comprise a series of Brunnian links.<br><br>Claim 12 recites a method of using the identical device of claims 1 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a |

linked item consisting of a series of Brunnian links. Any differences in claim language between the device claims to create an item consisting of the series of Brunnian links (adjudicated as invalid in the '565 Patent) and the method claims using this device to create this same linked item are not sufficient to establish that claims 12 is patentably distinct over the invalidated claims of the same patent.

When viewed as a whole, '565 Patent claim 1's recitation of a "plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins," claim 8's recitation of "a hook adapted to extend into the access groove for capturing one end of a link" in view of the USPTO's prior construction of "access groove" as "the opening" in claim 1, claim 10's recitation of links as "elastic bands", and claim 11's recitation of links as "Brunnian links" in view of the USPTO's prior construction of "Brunnian link" (i.e. a series of links formed from closed loops each closed loop doubled over itself to capture another closed loop to form a chain), are narrower than, and therefore read on claim 12's steps of "assembling. . .", "capturing. . .", and "capturing and pulling. . .".

Loop-in-Loop further discloses that chains formed from these "Brunnian links", also known in the art as "loop-in-loop chains", have been known and created for over five centuries, having been "the predominant chain type. . .from the early Bronze Age in the Middle East." Loop-in-Loop at 1-3. Loop-in-loop chains were prominent in "Troy II, from prepalatial Crete," in Egypt "around 2100 B.C.", in Etruscan, Hellenistic and Roman times, in the Byzantine and Medieval periods in Europe, in India for over a thousand years, returned again to prominence in the Nineteenth Century, and remain well-known today. *Id.* at 2-3. Indeed, in a news article that the Plaintiff contributed to the Wall Street Journal, the sole inventor of the '565 Patent admitted that "[t]he fasteners are key to rubber-band bracelet crafting because they're used to connect bands that have been woven together with a loom. *The looming technique, which dates back to the 1800s, creates looped knots*

*called Brunnian links*", although Loop-in-Loop evidences that this technique was known for millenia before the 1800s.  Wall Street Journal. "From Kids' Craze to Courtroom Battle",
http://nysbar.com/blogs/EASL/2013/09/week_in_review_32.html.



Additionally, creating a chain of links with a plurality of elastic bands to form necklaces or bracelets was well known to a person of ordinary skill, and even children, as evidenced by Kenneway, a children's book published in 1977. As disclosed in Kenneway, it was well known to form a link from a rubber band doubled over itself to capture another rubber band to form a chain of rubber bands: "Making a rubber band chain: 1.  Place one rubber band over another. Take the overlapped band by one end and pull it through itself. 2.  Continue in the same way until the chain is as long as you want it. . ."  Kenneway at 28-29.  Kenneway provides further evidence that it was well known to use this technique to form chains of rubber bands and even jewelry such as rubber band necklaces.



**Rubber band necklace**

One way of keeping your collection of rubber bands is to wear it as a chain around your neck.

**THINGS TO DO USING RUBBER BANDS ONLY**





*Id.*; *see also, e.g. id.* at 9-23.

Indeed, the only difference between the technique of creating a chain of links with a plurality of elastic bands, using the well-known technique described in Kenneway, and a technique of creating a chain of Brunnian links (e.g. as shown in FIG. 1of Carruth (reproduced above); FIG. 4 of Meltzer (reproduced below), Loop-in-Loop; Wikihow; Loops & Laces Instructions; Pritchard YouTube; Takacs Youtube; Making Friends; and Hipster) is *a knot* – an actual knot is formed after one rubber band is doubled over itself to capture a second rubber band in Kenneway, while in the Brunnian links disclosed in Loop-in-Loop; Wikihow; Loops & Laces Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster, no knot is formed. *See also* Ex. 1001 at 2:30-31; FIG. 3.

The technique used to form the chain of Brunnian links (e.g. in Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster), i.e. without an actual knot, necessarily requires a structure to hold the ends of the rubber bands in place until another rubber band is folded over itself to capture those ends. As evidenced by Loop-in-Loop; Wikihow; Loops & Laces Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster, it was well known to to persons skilled in the art, and even children, to use one or more structures (e.g. fingers, dowels, pencils, paperclips, pegs of a peg board, or combinations thereof) to hold ends of elastic rubber bands in place while creating a chain of Brunnian links.

For example, Loops Instructions discloses that it was well known to use the identical method steps claimed in steps [12.2], [12.3] and [12.4] with fingers, instead of the loom of the Invalidated Claims, to create necklaces and headbands *see, e.g.,* Loops Instructions  at

5:


## HEADBANDS & BELTS

Nylon loops are machine washable in cool water, and machine dryable at low temperature.

**Materials**
Loops

**Make Hand Chains**
Hold up hand, palm facing you.

1. Twist loop back and forth over each finger.
2. With new color loop, repeat Step 1.
3. Starting with finger #1, lift lower loop from back of finger over upper loop and top of finger. Repeat with each finger in turn.
4. With new color loop, repeat Steps 2 and 3.

Continue to repeat until small "chain" is formed in palm of hand. Tug gently on first loop to begin to stretch chain. It takes about 5 or 6 loops to begin to see chain. At desired length, weave ends of first loop through last loop on finger #1, then #2, etc., to join chain into a circle. Knot ends together to secure.

**Make Hand Chain Belts**
Measure waist. Double length for double wrapped belt and add 36 inches to this measurement to allow for 18 inch ties. Make hand chain in desired pattern for length needed. Tie loops at each end to secure and slip ends through back of chains on wrong side of belt.

STEP 1   STEP 2   STEP 3   STEP 4

LEFT HAND   LEFT HAND   LEFT HAND   LEFT HAND

Wikihow, Pritchard YouTube, Making Friends, Hiler, and Hipster further disclose that it was well known to use the method steps claimed in steps [12.2], [12.3] and [12.4] with adjacent fingers, dowels, pencils, paperclips, pegs of a peg board, or combinations thereof, instead of the loom of the Invalidated Claims, to create necklaces, headbands, jumpropes, hair scrunchies, jump ropes, purses, etc., and to secure the looped ends of hotpads and placemats, to hold ends of elastic rubber bands in place while creating a chain of Brunnian links. *See, e.g.,*

## Patriotic
## Fingerweave Headband

Remembering fingerweaving with stretchy
loops? Your kids will love it as much as
you did! My eight-year-old daughter,
Jamie, designed this patriotic headband
and showed me how to make it!

### You need:

- Red, White & Blue
  Weaving Loops
- White Star Pony Beads

### Instructions:



1. Wrap the first loop
around your pinky.
Twist it one half turn
and loop it around
your ring finger.



2. Twist it another
half loop and loop it
around your middle
finger. Another half
twist and then
around your index
finger.



3. Repeat with the
second loop.



4. Stretch out the
bottom loop from
from your pinky, Lift
it over the top loop
and stretch it over to
the back of your
pinky.



5. Do the same with
your the loops on the
other three fingers.
Continue weaving
alternating red and
white loops. The
headband will start
to form down the
back of your hand.



6. Do 17 rows of red
and white, 8 rows of
all blue and 17 more
rows of red and
white. If you need to
take a break, slide a
pencil or pen
through the working
loops as you remove
them from your
fingers.

Making Friends at http://makingfriends.com/headband_fingerweave.htm , April 7,
2005.

As further evidenced by Hiler, Loops Instructions, Pritchard YouTube, Making Friends, Hiler, and Hipster and admitted by Plaintiff, it was well known to capture one end of an elastic rubber band (e.g. hair band) and pull the end over and onto a pencil, finger, and/or peg of a peg board, while the elastic band, or the pencil, finger, and/or peg of a peg board, is engaged with another elastic rubber band, and to then capture and pull ends of additional elastic rubber bands in the same manner until a desired length of chain (e.g. the circumference of the person's wrist) is obtained:

> "Begin by place [*sic*] two rubber bands between the the thumb and index finger of your non-dominant hand. . . Pull the rubber band tight. Take to [*sic*] rubber bands and fold them over the rubber band that is pulled tight between the thumb and index finger. Now thread a pencil through the four loops that are hanging over the rubber bands that are extended over the fingers. Pull them tight and prepare to loop the next two rubber bands through the four loops hanging loose. Continue this process until the chain reaches the desired length. . . If you are creating these [rubber band necklaces] in bulk, a peg board is a good idea. The first loops that are attached to the pencil can be held in place with a peg board. This will keep the pencil from moving about and make it easier to continue with the looping. Mass production goes much faster this way." Hiler at 2.

This well-known technique permitted the user (e.g. a child) to create a chain of rubber bands without forming an actual knot in each pair of linked rubber bands in the chain.  As evidenced by Hiler, the use of pegs in a peg board to hold ends of the rubber bands in place simplified the process of creating the chain.  Hiler at 2. Further to the kit of the Invalidated Claims, it was well known to provide loom kits with elastic bands/elastic loops, pins and hooks.  *See, e.g.* WN Looms; Doodles.



The Plaintiff has also admitted that his own daughters didn't see the point of using Ng's first peg board (push pins in a block of wood) to make bracelets that they readily knew how to make by hand. *See* Sweeney & Gosfield, "How a DIY Dad took the toy world by storm with Rainbow Loom."

These references additionally evidence that it was well known in the relevant art that using a structure to hold ends of the rubber bands in place while creating a chain of Brunnian links solved the problem of Brunnian links in the chain coming undone during creation and resulted in improved ease and speed of chain creation. *See, e.g.,* Hiler at 1; WikiHow at 2; Kenneway at 23; Making Friends; Loops Instructions at 5; Hipster at 44-48.  Thus, when viewing the Invalidated Claims as a whole which recite the kit to create an item consisting of a series of Brunnian links, especially in view of the well-known techniques for creating such a series of Brunnian links using elastic bands as evidenced by at least Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster, claim 12's steps of  "assembling. . .", "capturing. . .", and "capturing and pulling. . .". merely recite a method of using the kit of claims 1, 8 and 10, in its intended manner as recited in claim 11, and applying

| | |
|---|---|
| | common sense and well-known techniques to solve an identical problem – simplifying the creation of a Brunnian linked item.  Thus, claim 12 is not patentably distinct from the Invalidated Claims. |
| | Since the subject matter of the Invalidated Claims, and each of these references are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of the Invalidated Claims with common sense and well-known looming techniques evidenced by these references to use the kit of the Invalidated Claims in its intended manner to create a series of Brunnian links using the elastic bands and the structure of the invalidated kit. |
| | Accordingly, '565 Patent claim12 is obvious over, and is not patentably distinct from, the Invalidated Claims to a person skilled in the relevant are as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster. |
| | To the extent that the preamble is determined to be a limitation, and to the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed a method of creating a linked item. *See, e.g.,*: |
| | At least as early as August 1993, Macbain disclosed a method of creating a linked item.  Macbain discloses a method for twining or weaving.  (*See, e.g.,* col. 2, line 42). |
| [12.1] supporting at least one pin bar including a plurality of pins to a base to define a desired relative | *See* chart for claim [12.0].<br><br>The Invalidated Claims disclosed a kit in which at least one pin bar including a plurality of pins was supported to a base to define a desired relative special |

| | |
|---|---|
| special relationship between at least two adjacent pins; | relationship between at least two adjacent pins for creating an item consisting of a series of links; *see, e.g.,*: <br><br> Invalidated Claims of the '565 Patent: <br><br> 1. A kit for creating an item consisting of a series of links, the device comprising: **a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation** and an opening on a front side of each of the plurality of pins. <br><br> 10. [The kit as recited in claim 1,] wherein the series of links comprises a series of elastic bands." <br><br> 11. [The kit as recited in claim 1,] wherein the series of links comprise a series of Brunnian links. <br><br> To the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed supporting at least one pin bar including a plurality of pins to a base to define a desired relative special relationship between at least two adjacent pins. *See, e.g.,*: <br><br> At least as early as August 1993, Macbain disclosed supporting at least one pin bar including a plurality of pins to a base to define a desired relative special relationship between at least two adjacent pins. Macbain discloses the step of supporting plates 15, 17 to a base 13. *See, e.g.,* col. 5, ln. 11-12 and FIGS. 2 and 4-6. The plates 15, 17 include loom fingers 19. When supported on the base 13, the plates 15, 17 define a desired relative special relationship between at least two adjacent loom fingers 19. See col. 4, ln. 36-43 stating "[t]he pattern formed by openings 61 is a straight line. As is also evident with reference to FIGS. 4, 5, and 6, the number of plates held by |

base 13 can be varied to form the desired hole pattern (e.g., circle, oval, partial oval, semi-circle, or straight line) and the desired size."



FIG-2

| [12.2]  assembling at least two elastic bands across adjacent pins; | *See* chart for claim [12.0]. |

*See* chart for claim [12.0].

The Invalidated Claims disclosed a kit for creating an item consisting of a series of elastic bands and/or Brunnian links; *see, e.g.,*:

Invalidated Claims of the '565 Patent:

1. A kit for creating an item consisting of a series of links, the device comprising: a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion **for holding a link in a desired orientation** and an opening on a front side of each of the plurality of pins.

10. [The kit as recited in claim 1,] **wherein the series of links comprises a series of elastic bands**.

11. [The kit as recited in claim 1,] **wherein the series of links comprise a series of Brunnian links**.

The step of "assembling at least two elastic bands across adjacent pins" simply involves using the identical device of claims 1 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a linked item consisting of a series of Brunnian links. Any differences in claim language between the device claims to create an item consisting of the series of Brunnian links (adjudicated as invalid in the '565 Patent) and the method claims using this device to create this same linked item are not sufficient to establish that claim 12 is patentably distinct over the invalidated claims of the same patent.

When viewed as a whole, '565 Patent claim 1's recitation of a "plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins," claim 8's recitation of "a hook adapted to extend into the access groove for capturing one end of a link" in view of the USPTO's prior construction of "access groove" as "the opening" in claim 1, claim 10's recitation of links as "elastic bands", and claim 11's recitation of links as "Brunnian links" in view of the USPTO's prior construction of "Brunnian link" (i.e. a series of links formed from closed loops each closed loop doubled over itself to capture another closed loop to form a chain), are narrower than, and therefore read on claim 12's step of "assembling at least two elastic bands across adjacent pins."

The technique used to form the chain of Brunnian links (as evidenced in Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster ) evidence that it was well known in the relevant art that using a structure to hold ends of the rubber bands in place while creating a chain of Brunnian links solved the problem of Brunnian links in the chain coming undone during creation and resulted in improved ease and speed of chain creation. *See, e.g.,* Hiler at 1; WikiHow at 2; Kenneway at 23; Making Friends; Loops Instructions  at 5; Hipster at 44-48.  Thus, when viewing the Invalidated Claims as a

whole which recite the kit to create an item consisting of a series of Brunnian links, especially in view of the well-known techniques for creating such a series of Brunnian links using elastic bands as evidenced by at least Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster, claim 12's step of "assembling at least two elastic bands across adjacent pins" merely recites a method of using the kit of claims 1, 8 and 10, in its intended manner as recited in claim 11, and applying common sense and well-known techniques to solve an identical problem – simplifying the creation of a Brunnian linked item.  Thus, claim 12 is not patentably distinct from the Invalidated Claims.

Since the subject matter of the Invalidated Claims, and each of these references are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of the Invalidated Claims with common sense and well-known looming techniques evidenced by these references to use the kit of the Invalidated Claims in its intended manner to create a series of Brunnian links using the elastic bands and the structure of the invalidated kit.

Accordingly, '565 Patent claim12 is obvious over, and is not patentably distinct from, the Invalidated Claims to a person skilled in the relevant art as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

To the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed assembling at least two elastic bands across adjacent pins. *See, e.g.,*:

At least as early as August 1993, Macbain disclosed assembling at least two elastic bands across adjacent pins.  Macbain discloses at least two closed loop wefts 1011 and 1012 are assembled across adjacent loom fingers 192, 193, 194 (see FIG. 7D,

|  | reproduced herein).  As discussed above in conjunction with the claim chart for Claim 10 above, the wefts 1011 and 1012 are elastic bands (*See, e.g.,* col. 5, ln. 24-27: "it is preferred to use closed loop materials made from fabric which has some *elasticity*." (emphasis added).)  To the extent that Plaintiff asserts that Macbain does not disclose this step of the claim, since the subject matter of the Macbain, and each of Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of Macbain with common sense and well-known looming techniques evidenced by these references to use the a weaving apparatus of Macbain in its intended manner to create a series of Brunnian links using the elastic bands and the structure of Macbain's weaving apparatus. Accordingly, '565 Patent claim12 is obvious over Macbain to a person skilled in the relevant art as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster. |
|---|---|
| [12.3] capturing one end of | *See* chart for claim [12.0]. |

| an elastic band and pulling the end over and onto an adjacent pin while engaged with another elastic band; and | The Invalidated Claims disclosed a kit for creating an item consisting of a series of elastic bands and/or Brunnian links; *see, e.g.,*: |
|---|---|
| | Invalidated Claims of the '565 Patent: |
| | 1. A kit for creating an item consisting of a series of links, the device comprising: a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion **for holding a link in a desired orientation** and an opening on a front side of each of the plurality of pins. |
| | 8. [The kit as recited in claim 1,] including **a hook adapted to extend into the access groove for capturing one end of a link.** |
| | 10. [The kit as recited in claim 1,] **wherein the series of links comprises a series of elastic bands**. |
| | 11. [The kit as recited in claim 1,] **wherein the series of links comprise a series of Brunnian links**. |
| | The step of "capturing one end of an elastic band and pulling the end over and onto an adjacent pin while engaged with another elastic band" simply involves using the identical device of claims 1 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a linked item consisting of a series of Brunnian links. Any differences in claim language between the device claims to create an item consisting of the series of Brunnian links (adjudicated as invalid in the '565 Patent) and the method claims using this device to create this same linked item are not sufficient to establish that claim 12 is patentably distinct over the invalidated claims of the same patent. |

When viewed as a whole, '565 Patent claim 1's recitation of a "plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins," claim 8's recitation of "a hook adapted to extend into the access groove for capturing one end of a link" in view of the USPTO's prior construction of "access groove" as "the opening" in claim 1, claim 10's recitation of links as "elastic bands", and claim 11's recitation of links as "Brunnian links" in view of the USPTO's prior construction of "Brunnian link" (i.e. a series of links formed from closed loops each closed loop doubled over itself to capture another closed loop to form a chain), are narrower than, and therefore read on claim 12's step of "capturing one end of an elastic band and pulling the end over and onto an adjacent pin while engaged with another elastic band."

The technique used to form the chain of Brunnian links (as evidenced in Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster ) evidence that it was well known in the relevant art that using a structure to hold ends of the rubber bands in place while creating a chain of Brunnian links solved the problem of Brunnian links in the chain coming undone during creation and resulted in improved ease and speed of chain creation. *See, e.g.,* Hiler at 1; WikiHow at 2; Kenneway at 23; Making Friends; Loops Instructions  at 5; Hipster at 44-48.  Thus, when viewing the Invalidated Claims as a whole which recite the kit to create an item consisting of a series of Brunnian links, especially in view of the well-known techniques for creating such a series of Brunnian links using elastic bands as evidenced by at least Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster, claim 12's step of "capturing one end of an elastic band and pulling the end over and onto an adjacent pin while engaged with another elastic band" merely recites a step of a method of using the kit of claims 1, 8 and 10, in its intended manner as recited in claim 11, and applying common sense and well-known techniques to solve an identical problem – simplifying the creation

of a Brunnian linked item.  Thus, claim 12 is not patentably distinct from the Invalidated Claims.

Since the subject matter of the Invalidated Claims, and each of these references are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of the Invalidated Claims with common sense and well-known looming techniques evidenced by these references to use the kit of the Invalidated Claims in its intended manner to create a series of Brunnian links using the elastic bands and the structure of the invalidated kit.

Accordingly, '565 Patent claim 12 is obvious over, and is not patentably distinct from, the Invalidated Claims to a person skilled in the relevant are as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

To the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed capturing one end of an elastic band and pulling the end over and onto an adjacent pin while engaged with another elastic band. *See, e.g.,*:



FIG-7A

At least as early as August 1993, Macbain disclosed capturing one end of an elastic band and pulling the end over and onto an adjacent pin while engaged with another elastic band. Macbain discloses that once the closed loop wefts $101_1$, $101_2$ have been placed on the loom fingers $19_2$, $19_3$, $19_4$, an end of a warp 103 (illustrated as a band in FIG. 8) is captured and pulled over and onto an adjacent pin (see the loom finger $19_2$ in FIG. 8). While the warp 103 is pulled through the loom finger $19_2$, the warp 103 would necessarily engage the closed loop weft $101_1$, as well as the loom finger 192 as shown in modified Fig. 7A.

As the warp thread 103 is pulled through the loom finger 192 by the hook 105, it would inherently engage the closed loop weft 1011, and the hook 105 would thereby cause the weft 1011 (i.e., a link), which is supported on the loom fingers 191-193, to move and hence "manipulate" the same. This engagement would necessarily occur due to the manner in which the warp 103 is pulled though the loom finger 192 by hook 105, as well as the physical dimensions of the relevant parts of Macbain's loom, namely, the depth of the channel 77 of the loom finger 192 and the diameters of the hook 105 and the warp 103, which is shown in FIG. 8 in the form of a band (i.e., a closed loop having a pair of opposed arcuate ends and a pair of opposed legs extending between the arcuate ends). *See* Macbain at ¶139.

With reference to the modified view of FIG. 7A below, because the warp 103 is in the form of a band (*See* Macbain at FIG. 8), two strands of the warp 103 would have to pass through the weft 1011 when the warp 103 is pulled through the loom finger 192 by the hook 105. In fact, at the point where the hook portion 107 of the hook 105 reaches the weft 1011, the hook portion 107 would have to pass through the weft 1011 together with the two warp strands. At such point, the hook 105 and its hook portion 107 completely occupy the channel 77 (*see* FIG. 8), thereby causing both of the warp strands to be positioned outside the channel 77. The modified view

of FIG. 7A above illustrates the hook portion 107 (see the black-solid circle in FIG. 7A) and the two warp strands of the warp 103 (see the two white circles in FIG. 7A) as they pass through the weft 1011. It should be noted that the weft 1011 illustrated in FIG. 7A is wrapped loosely around the loom fingers 191, 192, 193 such that it is spaced from their associated channels 77.

However, FIG. 7A illustrates the weft 1011 prior to it being completely wrapped around the loom fingers 191, 192, 193. Once the wrapped weft 1011 is tightened around the loom fingers 191, 192, 193 as illustrated in FIGS. 7C and 8, the loom fingers 191-193 are roped between the weft 1011 such that the weft 1011 is positioned directly against the channels 77. With the weft 1011 in such a position, when the two strands of the warp 103 and the hook portion 107 of the hook 105 pass through the weft 1011 simultaneously, the warp strands would necessarily engage the weft 1011 and cause same to move, as shown in the modified view of FIG. 7A above. *See* Macbain at ¶140. After the hook portion 107 passes through the weft 1011, there would be continued engagement between the weft 1011 and the warp 103 as the two strands of the warp 103 are pulled through the weft 1011. As illustrated in FIG. 7A (see the modified version above), the depth of the channels 77 is substantially identical to the diameter of the warp 103. As a result, the channel 77 of the loom finger 192 is only large enough to receive, at most, one of the two warp strands as the warp 103 is pulled through the weft 1011. In such circumstances, only one of the two warp strands ("the first strand") could possibly pass through the channel 77 of the loom finger 192. The other strand of the warp 103 ( "the second strand") must pass through the weft 1011 while positioned outside the channel 77. When the weft 1011 is roped (i.e., tightly wrapped) around the loom fingers 191, 192, 193 such that the weft 1011 is positioned directly against the loom fingers' channels 77 (as illustrated in FIGS. 7C and 8), at least the second strand of the warp 103 would continue to be in engagement with the weft 101econd. For the foregoing reasons, the warp 103 in Macbain would necessarily engage the weft 1011, which is supported on the loom fingers 191-193, and cause the same to move while being

| | |
|---|---|
| | pulled through the loom finger 192.  *See* Macbain at ¶141.<br><br>To the extent that Plaintiff asserts that Macbain does not disclose this step of the claim, since the subject matter of the Macbain, and each of Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of Macbain with common sense and well-known looming techniques evidenced by these references to use the a weaving apparatus of Macbain in its intended manner to create a series of Brunnian links using the elastic bands and the structure of Macbain's weaving apparatus.<br><br>Accordingly, '565 Patent claim12 is obvious over Macbain to a person skilled in the relevant art as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster. |
| [12.4] capturing and pulling subsequent ends over until a desired link length and configuration is obtained. | *See* chart for claim [12.0].<br><br>The Invalidated Claims disclosed a kit for creating an item consisting of a series of elastic bands and/or Brunnian links; *see, e.g.,*:<br><br>Invalidated Claims of the '565 Patent:<br><br>1. A kit for creating an item consisting of a series of links, the device comprising: a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion **for holding a link in a desired orientation** and an opening on a front side of each of the plurality of pins. |

8. [The kit as recited in claim 1,] including **a hook adapted to extend into the access groove for capturing one end of a link.**

10. [The kit as recited in claim 1,] **wherein the series of links comprises a series of elastic bands**.

11. [The kit as recited in claim 1,] **wherein the series of links comprise a series of Brunnian links**.

The step of "capturing and pulling subsequent ends over until a desired link length and configuration is obtained" simply involves using the identical device of claims 1 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a linked item consisting of a series of Brunnian links. Any differences in claim language between the device claims to create an item consisting of the series of Brunnian links (adjudicated as invalid in the '565 Patent) and the method claims using this device to create this same linked item are not sufficient to establish that claim 12 is patentably distinct over the invalidated claims of the same patent.

When viewed as a whole, '565 Patent claim 1's recitation of a "plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins," claim 8's recitation of "a hook adapted to extend into the access groove for capturing one end of a link" in view of the USPTO's prior construction of "access groove" as "the opening" in claim 1, claim 10's recitation of links as "elastic bands", and claim 11's recitation of links as "Brunnian links" in view of the USPTO's prior construction of "Brunnian link" (i.e. a series of links formed from closed loops each closed loop doubled over itself to capture another closed loop to form a chain), are narrower than, and therefore read on claim 12's step of "capturing and pulling subsequent ends over until a desired link length and configuration is obtained."

The technique used to form the chain of Brunnian links (as evidenced in Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster ) was well known in the relevant art.  These references further evidence that using a structure to hold ends of the rubber bands in place while creating a chain of Brunnian links solved the problem of Brunnian links in the chain coming undone during creation and resulted in improved ease and speed of chain creation was also well known in the relevant art.  *See, e.g.,* Hiler at 1; WikiHow at 2; Kenneway at 23; Making Friends; Loops Instructions  at 5; Hipster at 44-48.  Thus, when viewing the Invalidated Claims as a whole which recite the kit to create an item consisting of a series of Brunnian links, especially in view of the well-known techniques for creating such a series of Brunnian links using elastic bands as evidenced by at least Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster, claim 12's step of "capturing and pulling subsequent ends over until a desired link length and configuration is obtained" merely recites a step of a method of using the kit of claims 1, 8 and 10, in its intended manner as recited in claim 11, and applying common sense and well-known techniques to solve an identical problem – simplifying the creation of a Brunnian linked item.  Thus, claim 12 is not patentably distinct from the Invalidated Claims.

Since the subject matter of the Invalidated Claims, and each of these references are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of the Invalidated Claims with common sense and well-known looming techniques evidenced by these references to use the kit of the Invalidated Claims in its intended manner to create a series of Brunnian links using the elastic bands and the structure of the invalidated kit.

Accordingly, '565 Patent claim 12 is obvious over, and is not patentably distinct from, the Invalidated Claims to a person skilled in the relevant are as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard

YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

To the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed capturing and pulling subsequent ends over until a desired link length and configuration is obtained. *See, e.g.,*:

At least as early as August 1993, Macbain discloses additional loom fingers 19 to be used in twining or weaving. *See, e.g.,* Ex. 1013 at 5:11-14 stating "with plates 15 and 17 assembled with base 13 as illustrated in FIGS. 2 and 3, the desired plurality of fingers $19_{1,2,3,4...}$ are slidably received in opening 49, 59 and/or 61." Macbain thus discloses that subsequent ends of additional warp bands 103 are captured and pulled over and through the loom fingers until a desired link length and configuration is obtained. Macbain further teaches utilizing a large number of loom fingers 19 (*See, e.g., Id.* at 5:16-19 ("[w]hile only four loom fingers 19 are illustrated, it will be appreciated that, for instance, an elongated straight line of loom fingers can be formed utilizing all of openings 61"); see also *Id.* at 4:46-47 ("long plates could be used to link two or more base members 13").) When the loom fingers 19 are utilized in large numbers, additional warp loops 103 would be required to be inserted into a large weft formation formed by multiple closed loop wefts 101. Macbain thus discloses that ends of additional warp loops 103 would be captured and pulled over the loom fingers until a desired link length and configuration is obtained.

To the extent that Plaintiff asserts that Macbain does not disclose this step of the claim, since the subject matter of the Macbain, and each of Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled

| | |
|---|---|
| | person would have looked to combine the subject matter of Macbain with common sense and well-known looming techniques evidenced by these references to use the a weaving apparatus of Macbain in its intended manner to create a series of Brunnian links using the elastic bands and the structure of Macbain's weaving apparatus.<br><br>Accordingly, '565 Patent claim 12 is obvious over Macbain to a person skilled in the relevant art as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster. |
| | |
| [13.0]  The method as recited in claim 12, | Claim 13 is not patentably distinct from the Invalidated Claims of the '565 Patent: *See* the chart for claim 12 above and claim 13 below.<br><br>*See* the chart for claim 12 above. |
| [13.1]  wherein a second of the at least two elastic bands is placed atop one end of the first of the at least two elastic bands on a common pin. | *See* chart for claim 12.<br><br>The Invalidated Claims disclosed a kit for creating an item consisting of a series of elastic bands and/or Brunnian links; *see, e.g.,*:<br><br>Invalidated Claims of the '565 Patent:<br><br>1. A kit for creating an item consisting of a series of links, the device comprising: a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion **for holding a link in a desired orientation** and an opening on a front side of each of the plurality of pins.<br><br>8. [The kit as recited in claim 1,] including **a hook adapted to extend into the** |

**access groove for capturing one end of a link.**

10. [The kit as recited in claim 1,] **wherein the series of links comprises a series of elastic bands**.

11. [The kit as recited in claim 1,] **wherein the series of links comprise a series of Brunnian links**.

The step of "wherein a second of the at least two elastic bands is placed atop one end of the first of the at least two elastic bands on a common pin" simply involves using the identical device of claims 1 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a linked item consisting of a series of Brunnian links. Any differences in claim language between the device claims to create an item consisting of the series of Brunnian links (adjudicated as invalid in the '565 Patent) and the method claims using this device to create this same linked item are not sufficient to establish that claim 13 is patentably distinct over the invalidated claims of the same patent.

When viewed as a whole, '565 Patent claim 1's recitation of a "plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins," claim 8's recitation of "a hook adapted to extend into the access groove for capturing one end of a link" in view of the USPTO's prior construction of "access groove" as "the opening" in claim 1, claim 10's recitation of links as "elastic bands", and claim 11's recitation of links as "Brunnian links" in view of the USPTO's prior construction of "Brunnian link" (i.e. a series of links formed from closed loops each closed loop doubled over itself to capture another closed loop to form a chain), are narrower than, and therefore read on claim 12's step of "wherein a second of the at least two elastic bands is placed atop one end of the first of the at least two elastic bands on a common pin."

The technique used to form the chain of Brunnian links (as evidenced in Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster ) was well known in the relevant art.  These references further evidence that using a structure to hold ends of the rubber bands in place while creating a chain of Brunnian links solved the problem of Brunnian links in the chain coming undone during creation and resulted in improved ease and speed of chain creation was also well known in the relevant art.  *See, e.g.,* Hiler at 1; WikiHow at 2; Kenneway at 23; Making Friends; Loops Instructions  at 5; Hipster at 44-48.

The technique used to form the chain of Brunnian links including placing one elastic band atop one end of another elastic band on a common structure was well known in the relevant art as evidenced by Loops Instructions; Pritchard YouTube; Takacs Youtube; Making Friends; and Hiler. *See* claim [12.0] above

Thus, when viewing the Invalidated Claims as a whole which recite the kit to create an item consisting of a series of Brunnian links, especially in view of the well-known techniques for creating such a series of Brunnian links using elastic bands as evidenced by at least Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster, claim 13's step of "wherein a second of the at least two elastic bands is placed atop one end of the first of the at least two elastic bands on a common pin" merely recites a step of a method of using the kit of claims 1, 8 and 10, in its intended manner as recited in claim 11, and applying common sense and well-known techniques to solve an identical problem – simplifying the creation of a Brunnian linked item. Thus, claim 13 is not patentably distinct from the Invalidated Claims.

Since the subject matter of the Invalidated Claims, and each of these references are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands formed as Brunnian links), a skilled person would have looked to combine the subject matter of the Invalidated Claims with common sense

and well-known looming techniques evidenced by these references to use the kit of the Invalidated Claims in its intended manner to create a series of Brunnian links using the elastic bands and the structure of the invalidated kit.

Accordingly, '565 Patent claim13 is obvious over, and is not patentably distinct from, the Invalidated Claims to a person skilled in the relevant are as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

To the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed wherein a second of the at least two elastic bands is placed atop one end of the first of the at least two elastic bands on a common pin. *See, e.g.,*:

At least as early as August 1993, Macbain disclosed wherein a second of the at least two elastic bands is placed atop one end of the first of the at least two elastic bands on a common pin.  Macbain discloses that one of the two closed loop elastic wefts 1011, 1012 is placed atop one end of the other closed loop elastic wefts on a common loom finger (e.g., the loom finger 193 as shown in FIG. 7D, reproduced herein).



To the extent that Plaintiff asserts that Macbain does not disclose this step of the claim, since the subject matter of the Macbain, and each of Kenneway, Carruth,

| | |
|---|---|
| | Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of Macbain with common sense and well-known looming techniques evidenced by these references to use the a weaving apparatus of Macbain in its intended manner to create a series of Brunnian links using the elastic bands and the structure of Macbain's weaving apparatus.<br><br>Accordingly, '565 Patent claim 12 is obvious over Macbain to a person skilled in the relevant art as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster. |
| | |
| [14.0] The method as recited in claim 13, | Claim 14 is not patentably distinct from the Invalidated Claims of the '565 Patent: *See* the chart for claims 12 and 13 above and claim 14 below.<br><br>*See* the chart for claims 12 and 13 above. |
| [14.1] wherein capturing one end of the elastic band includes using a hook tool reaching into an access groove of the pin to extend below the top most elastic band and grasp a bottom elastic band with the hook tool. | *See* chart for claims 12 and 13.<br><br>The Invalidated Claims disclosed a kit for creating an item consisting of a series of elastic bands and/or Brunnian links; *see, e.g.,*:<br><br>Invalidated Claims of the '565 Patent:<br><br>1. A kit for creating an item consisting of a series of links, the device comprising: a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion **for holding a link in a desired** |

**orientation** and an opening on a front side of each of the plurality of pins.

8. [The kit as recited in claim 1,] including **a hook adapted to extend into the access groove for capturing one end of a link.**

10. [The kit as recited in claim 1,] **wherein the series of links comprises a series of elastic bands**.

11. [The kit as recited in claim 1,] **wherein the series of links comprise a series of Brunnian links**.

The step of "wherein capturing one end of the elastic band includes using a hook tool reaching into an access groove of the pin to extend below the top most elastic band and grasp a bottom elastic band with the hook tool" simply involves using the identical device of claims 1, 8 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a linked item consisting of a series of Brunnian links. Any differences in claim language between the device claims to create an item consisting of the series of Brunnian links (adjudicated as invalid in the '565 Patent) and the method claims using this device to create this same linked item are not sufficient to establish that claim 14 is patentably distinct over the invalidated claims of the same patent.

When viewed as a whole, '565 Patent claim 1's recitation of a "plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins," claim 8's recitation of "a hook adapted to extend into the access groove for capturing one end of a link" in view of the USPTO's prior construction of "access groove" as "the opening" in claim 1, claim 10's recitation of links as "elastic bands", and claim 11's recitation of links as "Brunnian links" in view of the USPTO's prior construction of "Brunnian link" (i.e. a series of links formed from closed loops each closed loop doubled over

itself to capture another closed loop to form a chain), are narrower than, and therefore read on claim 14's step of "wherein a second of the at least two elastic bands is placed atop one end of the first of the at least two elastic bands on a common pin."

The technique used to form the chain of Brunnian links (as evidenced in Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster ) was well known in the relevant art.  These references further evidence that using a structure to hold ends of the rubber bands in place while creating a chain of Brunnian links solved the problem of Brunnian links in the chain coming undone during creation and resulted in improved ease and speed of chain creation was also well known in the relevant art.  *See, e.g.,* Hiler at 1; WikiHow at 2; Kenneway at 23; Making Friends; Loops Instructions  at 5; Hipster at 44-48.

The technique used to form the chain of Brunnian links including extending below the top most elastic band and grasping a bottom elastic band was well known in the relevant art as evidenced by Loops Instructions; Pritchard YouTube; Takacs Youtube; Making Friends; and Hiler. *See* claim [12.0] above

Thus, when viewing the Invalidated Claims as a whole which recite the kit to create an item consisting of a series of Brunnian links, especially in view of the well-known techniques for creating such a series of Brunnian links using elastic bands as evidenced by at least Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster, claim 14's step of "wherein capturing one end of the elastic band includes using a hook tool reaching into an access groove of the pin to extend below the top most elastic band and grasp a bottom elastic band with the hook tool" merely recites a step of a method of using the kit of claims 1, 8 and 10, in its intended manner as recited in claim 11, and applying common sense and well-known techniques to solve an identical problem – simplifying the creation of a Brunnian linked item.

Thus, claim 14 is not patentably distinct from the Invalidated Claims.

Since the subject matter of the Invalidated Claims, and each of these references are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands formed as Brunnian links), a skilled person would have looked to combine the subject matter of the Invalidated Claims with common sense and well-known looming techniques evidenced by these references to use the kit of the Invalidated Claims in its intended manner to create a series of Brunnian links using the elastic bands and the structure of the invalidated kit.

Accordingly, '565 Patent claim14 is obvious over, and is not patentably distinct from, the Invalidated Claims to a person skilled in the relevant are as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

To the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed wherein capturing one end of the elastic band includes using a hook tool reaching into an access groove of the pin to extend below the top most elastic band and grasp a bottom elastic band with the hook tool. *See, e.g.,*:

At least as early as August 1993, Macbain disclosed wherein capturing one end of the elastic band includes using a hook tool reaching into an access groove of the pin to extend below the top most elastic band and grasp a bottom elastic band with the hook tool. As discussed above, Macbain discloses after the wefts 1011, 1012 are weaved or twined on the loom fingers 19 as illustrated in FIG. 7D (see col. 5, ln. 30-45), a hook 105 having a hook portion 107 is inserted into the grooves 77 of the loom fingers 19 such that the hook portion 15 extends below the weft 1011 and grasp a warp thread 103 (shown as a band in FIG. 8, reproduced herein).

FIG-8

To the extent that Plaintiff asserts that Macbain does not disclose this step of the claim, since the subject matter of the Macbain, and each of Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of Macbain with common sense and well-known looming techniques evidenced by these references to use the a weaving apparatus of Macbain in its intended manner to create a series of Brunnian links using the elastic bands and the structure of Macbain's weaving apparatus.

Accordingly, '565 Patent claim12 is obvious over Macbain to a person skilled in the relevant art as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

| | |
|---|---|
| | |
| [15.0] The method as recited in claim 12, | Claim 15 is not patentably distinct from the Invalidated Claims of the '565 Patent: *See* the chart for claim 12 above and claim 15 below.<br><br>*See* the chart for claim 12 above. |

| | |
|---|---|
| [15.1] including assembling a plurality of pin bars to a base to provide parallel rows of pins. | *See* chart for claim 12.<br><br>The Invalidated Claims disclosed a kit for creating an item consisting of a series of elastic bands and/or Brunnian links; *see, e.g.,*:<br><br>Invalidated Claims of the '565 Patent:<br><br>1. A kit for creating an item consisting of a series of links, the device comprising: **a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation** and an opening on a front side of each of the plurality of pins.<br><br>6. [The kit as recited in claim 1,] wherein the base comprises a plurality of bases for **securing a plurality of pin bars in a desired relative special orientation for forming the series of links in a desired pattern**.<br><br>8. [The kit as recited in claim 1,] including a hook adapted to extend into the access groove for capturing one end of a link**.**<br><br>10. [The kit as recited in claim 1,] wherein the series of links comprises a series of elastic bands.<br><br>11. [The kit as recited in claim 1,] wherein the series of links comprise a series of Brunnian links.<br><br>The step of "assembling a plurality of pin bars to a base to provide parallel rows of pins" simply involves using the identical device of claims 1, 6, 8 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a linked item consisting of a series of Brunnian links. Any differences in claim language between the device claims to create an item consisting of the series of |

Brunnian links (adjudicated as invalid in the '565 Patent) and the method claims using this device to create this same linked item are not sufficient to establish that claim 15 is patentably distinct over the invalidated claims of the same patent.

When viewed as a whole, '565 Patent claim 1's recitation of a "plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins," claim 6's recitation of "wherein the base comprises a plurality of bases for securing a plurality of pin bars in a desired relative special orientation for forming the series of links in a desired pattern", claim 8's recitation of "a hook adapted to extend into the access groove for capturing one end of a link" in view of the USPTO's prior construction of "access groove" as "the opening" in claim 1, claim 10's recitation of links as "elastic bands", and claim 11's recitation of links as "Brunnian links" in view of the USPTO's prior construction of "Brunnian link" (i.e. a series of links formed from closed loops each closed loop doubled over itself to capture another closed loop to form a chain), are narrower than, and therefore read on claim 15's step of "assembling a plurality of pin bars to a base to provide parallel rows of pins."

Accordingly, '565 Patent claim15 is obvious over, and is not patentably distinct from, the Invalidated Claims to a person skilled in the relevant are as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

To the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed assembling a plurality of pin bars to a base to provide parallel rows of pins. *See, e.g.,*:

At least as early as August 1993, Macbain disclosed assembling a plurality of pin bars to a base to provide parallel rows of pins.  Macbain discloses, with reference to

FIGS. 4, 5, and 6, the number of plates held by base 13 can be varied to form the desired hole pattern including to provide parallel rows of loom fingers. *see e.g.,* FIG. 2; 4:38-43: ("The pattern formed by openings 61 is a straight line."); 4:18-22: ("The distance between surfaces 45, 55 and 47, 57 and the diameter of openings 49, 59 and 61 are chosen such that plates 15 and 17 support a plurality of loom fingers 19 in substantially parallel fashion.")



FIG-2

To the extent that Plaintiff asserts that Macbain does not disclose this step of the claim, since the subject matter of the Macbain, and each of Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of Macbain with common sense and well-known looming techniques evidenced by these references to use the a weaving apparatus of Macbain in its intended manner to create a series of Brunnian links using the elastic bands and the structure of Macbain's weaving apparatus.

Accordingly, '565 Patent claim12 is obvious over Macbain to a person skilled in the relevant art as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops

| | Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster. |
|---|---|
| | |
| [16.0] The method as recited in claim 15, | Claim 16 is not patentably distinct from the Invalidated Claims of the '565 Patent: *See* the chart for claims 12 and 15 above and claim 16 below.<br><br>*See* the chart for claims 12 and 15 above. |
| [16.1] including the step of assembling the plurality of pin bars to a corresponding plurality of bases to define a desired pattern of pins. | *See* chart for claims 12 and 15.<br><br>The Invalidated Claims disclosed a kit for creating an item consisting of a series of elastic bands and/or Brunnian links; *see, e.g.,*:<br><br>Invalidated Claims of the '565 Patent:<br><br>1. A kit for creating an item consisting of a series of links, the device comprising: **a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation** and an opening on a front side of each of the plurality of pins.<br><br>6. [The kit as recited in claim 1,] **wherein the base comprises a plurality of bases for securing a plurality of pin bars in a desired relative special orientation for forming the series of links in a desired pattern**.<br><br>8. [The kit as recited in claim 1,] including a hook adapted to extend into the access groove for capturing one end of a link**.**<br><br>10. [The kit as recited in claim 1,] wherein the series of links comprises a series of elastic bands. |

11. [The kit as recited in claim 1,] wherein the series of links comprise a series of Brunnian links.

The step of "assembling the plurality of pin bars to a corresponding plurality of bases to define a desired pattern of pins" simply involves using the identical device of claims 1, 6, 8 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a linked item consisting of a series of Brunnian links. Any differences in claim language between the device claims to create an item consisting of the series of Brunnian links (adjudicated as invalid in the '565 Patent) and the method claims using this device to create this same linked item are not sufficient to establish that claim 16 is patentably distinct over the invalidated claims of the same patent.

When viewed as a whole, '565 Patent claim 1's recitation of a "plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins," claim 6's recitation of "wherein the base comprises a plurality of bases for securing a plurality of pin bars in a desired relative special orientation for forming the series of links in a desired pattern", claim 8's recitation of "a hook adapted to extend into the access groove for capturing one end of a link" in view of the USPTO's prior construction of "access groove" as "the opening" in claim 1, claim 10's recitation of links as "elastic bands", and claim 11's recitation of links as "Brunnian links" in view of the USPTO's prior construction of "Brunnian link" (i.e. a series of links formed from closed loops each closed loop doubled over itself to capture another closed loop to form a chain), are narrower than, and therefore read on claim 16's step of "assembling the plurality of pin bars to a corresponding plurality of bases to define a desired pattern of pins."

Accordingly, '565 Patent claim16 is obvious over, and is not patentably distinct from, the Invalidated Claims to a person skilled in the relevant are as evidenced by

Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

To the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed assembling the plurality of pin bars to a corresponding plurality of bases to define a desired pattern of pins. *See, e.g.,*:

At least as early as August 1993, Macbain disclosed assembling the plurality of pin bars to a corresponding plurality of bases to define a desired pattern of pins. Macbain discloses the number of plates 15, 17 held by base 13 can be varied to define a desired hole pattern, a desired pattern of pins (e.g., circle, oval, partial oval, semi-circle, or straight line) and the desired size." *See, e.g.,* 4:38-43: ("The pattern formed by openings 61 is a straight line. As is also evident with reference to FIGS. 4, 5, and 6, the number of plates held by base 13 can be varied to form the desired hole pattern (e. g. circle, oval, partial oval, semi-circle, or straight line) and the desired size."); col. 5, ln. 11-12 and FIGS. 2 and 4-6. Macbain discloses that "long plates could be used to link two or more base members 13". Ex. 1013 at 4:46-47. Given Macbain's disclosure that the number of plates 15, 17 can be varied to define a desired hole pattern, a desired pattern of pins (e.g., circle, oval, partial oval, semi-circle, or straight line) and the desired size," when two or more base members 13 are linked, Macbain necessarily discloses that the number of plates 15, 17 that are secured to the two or more base members can be varied to define a desired hole pattern, a desired pattern of pins and a desired size. *See, e.g., Id.* at 4:38-43, 46-47: ("The pattern formed by openings 61 is a straight line. As is also evident with reference to FIGS. 4, 5, and 6, the number of plates held by base 13 can be varied to form the desired hole pattern (e. g. circle, oval, partial oval, semi-circle, or straight line) and the desired size. . . Further, long plates could be used to link two or more base members 13."); 5:11-12; FIGS. 2 and 4-6.



FIG – 6

To the extent that Plaintiff asserts that Macbain does not disclose this step of the claim, since the subject matter of the Macbain, and each of Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of Macbain with common sense and well-known looming techniques evidenced by these references to use the a weaving apparatus of Macbain in its intended manner to create a series of Brunnian links using the elastic bands and the structure of Macbain's weaving apparatus.

Accordingly, '565 Patent claim12 is obvious over Macbain to a person skilled in the relevant art as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

| | |
|---|---|
| [17.0] The method as recited in claim 15, | Claim 17 is not patentably distinct from the Invalidated Claims of the '565 Patent: *See* the chart for claims 12 and 15 above and claim 17 below. |

| | |
|---|---|
| | *See* the chart for claims 12 and 15 above. |
| [17.1] including assembling a plurality elastic bands in a desired pattern to the plurality of pin bars including at least one elastic band that extends between pins of another pin bar. | The Invalidated Claims disclosed a kit for creating an item consisting of a series of elastic bands and/or Brunnian links; *see, e.g.,*:<br><br>Invalidated Claims of the '565 Patent:<br><br>1. A kit for creating an item consisting of a series of links, the device comprising: **a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation** and an opening on a front side of each of the plurality of pins.<br><br>6. [The kit as recited in claim 1,] **wherein the base comprises a plurality of bases for securing a plurality of pin bars in a desired relative special orientation for forming the series of links in a desired pattern**.<br><br>8. [The kit as recited in claim 1,] including a hook adapted to extend into the access groove for capturing one end of a link**.**<br><br>10. [The kit as recited in claim 1,] **wherein the series of links comprises a series of elastic bands**.<br><br>11. [The kit as recited in claim 1,] wherein the series of links comprise a series of Brunnian links.<br><br>The step of "assembling a plurality elastic bands in a desired pattern to the plurality of pin bars including at least one elastic band that extends between pins of another pin bar" simply involves using the identical device of claims 1, 6, 8 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a linked item consisting of a series of Brunnian links. Any differences in claim |

language between the device claims to create an item consisting of the series of Brunnian links (adjudicated as invalid in the '565 Patent) and the method claims using this device to create this same linked item are not sufficient to establish that claim 17 is patentably distinct over the invalidated claims of the same patent.

When viewed as a whole, '565 Patent claim 1's recitation of a "plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins," claim 6's recitation of "wherein the base comprises a plurality of bases for securing a plurality of pin bars in a desired relative special orientation for forming the series of links in a desired pattern", claim 8's recitation of "a hook adapted to extend into the access groove for capturing one end of a link" in view of the USPTO's prior construction of "access groove" as "the opening" in claim 1, claim 10's recitation of links as "elastic bands", and claim 11's recitation of links as "Brunnian links" in view of the USPTO's prior construction of "Brunnian link" (i.e. a series of links formed from closed loops each closed loop doubled over itself to capture another closed loop to form a chain), are narrower than, and therefore read on claim 17's step of "assembling a plurality elastic bands in a desired pattern to the plurality of pin bars including at least one elastic band that extends between pins of another pin bar."

Accordingly, '565 Patent claim17 is obvious over, and is not patentably distinct from, the Invalidated Claims to a person skilled in the relevant are as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster.

To the extent that the Plaintiff asserts that Defendants' products identified in Plaintiff's Preliminary Non-binding Identification of Asserted Claims and Accused Instrumentalities meet this limitation, at least the following prior art disclosed assembling a plurality elastic bands in a desired pattern to the plurality of pin bars including at least one elastic band that extends between pins of another pin bar. *See, e.g.,*:

At least as early as August 1993, Macbain disclosed assembling a plurality elastic bands in a desired pattern to the plurality of pin bars including at least one elastic band that extends between pins of another pin bar.  In Macbain, links are formed by closed loop wefts 1011, 1012 weaved together with a warp thread 105 (which is shown in FIG. 8 as a band). *See, e.g.,* col. 5, ln. 30-41 and 62-66, and FIG. 8. Macbain also teaches that "it is preferred to use closed loop materials made from fabric which has some *elasticity*" (emphasis added). Col. 5, ln. 24-27.  At least closed loop wefts $101_1$, $101_2$.  Macbain discloses that one of the two closed loop elastic wefts $101_1$, $101_2$ extends between loom fingers of another pin bar (e.g., the loom finger $19_2$ and $19_3$ as shown in FIG. 7D and FIG. 2, reproduced herein).



To the extent that Plaintiff asserts that Macbain does not disclose this step of the claim, since the subject matter of the Macbain, and each of Kenneway, Carruth,

| | |
|---|---|
| | Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster are directed to the same technical field (i.e., devices for creating items consisting of a series of elastic bands), a skilled person would have looked to combine the subject matter of Macbain with common sense and well-known looming techniques evidenced by these references to use the a weaving apparatus of Macbain in its intended manner to create a series of Brunnian links using the elastic bands and the structure of Macbain's weaving apparatus.<br><br>Accordingly, '565 Patent claim12 is obvious over Macbain to a person skilled in the relevant art as evidenced by Kenneway, Carruth, Loop-in-Loop; Wikihow; Loops Instructions; Pritchard YouTube; Crafster; Takacs Youtube; Making Friends; Hiler; and Hipster. |
| | |
| [18.0] The method as recited in claim 15, | Claim 18 is not patentably distinct from the Invalidated Claims of the '565 Patent: *See* the chart for claims 12 and 15 above and claim 18 below.<br><br>*See* the chart for claims 12 and 15 above. |
| [18.1] including the step of inserting ends of the elastic bands into a clip to form the linked item. | *See* the chart for claims 12 and 15 above.<br><br>The Invalidated Claims disclosed a kit for creating an item consisting of a series of elastic bands and/or Brunnian links; *see, e.g.,*:<br><br>Invalidated Claims of the '565 Patent:<br><br>1. A kit for creating an item consisting of a series of links, the device comprising: **a base; and at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a** |

**desired orientation** and an opening on a front side of each of the plurality of pins.

6. [The kit as recited in claim 1,] **wherein the base comprises a plurality of bases for securing a plurality of pin bars in a desired relative special orientation for forming the series of links in a desired pattern**.

8. [The kit as recited in claim 1,] including a hook adapted to extend into the access groove for capturing one end of a link**.**

10. [The kit as recited in claim 1,] **wherein the series of links comprises a series of elastic bands**.

11. [The kit as recited in claim 1,] wherein the series of links comprise a series of Brunnian links.

The step of "inserting ends of the elastic bands into a clip to form the linked item" simply involves using the identical device of claims 1, 6, 8 and 10 in its intended manner as recited in claim 11 to create the identical linked item, namely a linked item consisting of a series of Brunnian links. The only difference introduced by claim 18 – inserting ends of elastic bands into a clip to form a linked item – does not render this claim patentably distinct because a skilled person would have looked to well known techniques to insert ends of a chain of elastic bands formed as a series of Brunnian links into a well known clip to achieve a well known result as evidenced by Meltzer; Darnell; Carruth; Loop-in-Loop; Loops Instructions; WikiHow; and/or Crafster.  Meltzer; Darnel; Carruth; Loop-in-Loop; Loops Instructions; WikiHow and Crafster each disclose a "clip" or device for gripping or holding things together, as correctly construed by the USPTO during the LaRose IPR.

It would have been obvious to one of ordinary skill in the art in view of the

Invalidated Claims, or in combination with the teachings of other prior art identified by Defendants in these Invalidity Contentions, to perform the step of inserting ends of the elastic bands into a clip to form the linked item.  One of ordinary skill in the art would have been motivated to make the modification or combination for multiple reasons.  For example, Meltzer discloses a connecting member 24 for connecting ends of a series of links 22A-22H. Meltzer at Col. 4, ln. 56 – col. 5, ln. 4, and FIGS. 4-6 to hold ends of a series of links to secure the ends together.



FIG.6



Alternatively, Darnell discloses a circular connecting member for securing ends of a series of links, *See, e.g.,*



**FIG. 1**

Carruth discloses locking means 150 for securing ends of a series of Brunnian links; *See, e.g.:*



FIG. 4

*See, also e.g.,* Darnell at FIGS. 1-12; Carruth at FIGS. 2 and 4; *see also* Carruth col. 2, ln. 45-54, stating: "[t]he first end 101 and second end 102 can be connected together via a locking means 150 [which] may be one or more of any securing or locking devices well known to one of ordinary skill in the art . . . e.g., a clip mechanism").

Alternatively, Loop-in-Loop discloses that chains formed from these "Brunnian links", also known in the art as "loop-in-loop chains", have been known and created for over five centuries, having been "the predominant chain type. . .from the early Bronze Age in the Middle East." Loop-in-Loop at 1-3. Loop-in-loop chains were prominent in "Troy II, from prepalatial Crete," in Egypt "around 2100 B.C.", in Etruscan, Hellenistic and Roman times, in the Byzantine and Medieval periods in Europe, in India for over a thousand years, returned again to prominence in the Nineteenth Century, and remain well-known today. *Id.* at 2-3. Loop-in-Loop further discloses that clasps for securing ends of Brunnian links of a chain, including the "single-wire hook-and-eye", "wrapped single-wire hook-and-eye",

and "toggle clasp" are well known and can be found "on many ancient pieces." *Id. at* 152-157, 161-152.

Alternatively, Loops Instructions discloses several clips for securing ends of a series of elastic band Brunnian links including barrettes, banana clips and safety pins. *See, e.g.,* Loops Instructions at 6-7 ("Headbands & Belts", "Tied Loopy Barrettes", "Tied Loopy Banana Clip," "Threaded Pony Tail Scrunch."

As further evidenced by Craftster and WikiHow, it was well known to a person of ordinary skill, and even children, to use a clip, such as a paper clip, or another rubber band, yarn, string, thread or "anything" to secure the ends of a chain of elastic rubber bands together to form a necklace or bracelet once the chain reached its desired length. *See, e.g.,* Craftster at ("When you arer ready to end the bracelet, take the 2 loops in your final rubber band and stick the outside point of the paper clip through them.  Now your bracelet is complete."); WikiHow at 2 ("You could tie the ends together with another rubber band, the ends of the first and last rubber band, or take yarn, string, thread, anything, and tie them together like that, too.")

Thus Meltzer, Darnell, Carruth, Loop-in-Loop, Loops Instructions, Craftster and WikiHow each provided a teaching, suggestion, or motivation that would have led one of ordinary skill to to insert ends of a chain of elastic bands formed as a series of Brunnian links of the Invalidated Claims into a well known clips of Meltzer, Darnell, Carruth, Loop-in-Loop, Loops Instructions, Craftster and WikiHow or the teachings of other prior art identified by Defendants in these Invalidity Contention to arrive at the claimed invention.  Furthermore, making the combination or modification would require nothing more than common sense, making a mere design choice among known techniques having known and intended results, and combining prior art elements according to known methods to yield predictable results.

| | |
|---|---|
| | Since the subject matter of the Invalidated Claims and each of these references are directed to the same technical field (i.e., creating items consisting of a series of links together), a skilled person would have looked to provide a well-known clip as taught by Meltzer, Darnell, Carruth, Loop-in-Loop, Loops Instructions, Craftster or WikiHow, in the prior art kit of the Invalidated Claims to insert ends of a chain of elastic bands formed as a series of Brunnian links in a known manner to achieve a known result (e.g. to make the series of links wearable by the person who created the series as a bracelet or necklace and prevent the series of links from unraveling as they are not knotted together) as making the combination would require nothing more than common sense, and combining prior art elements according to known methods to yield known results. |