UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHOON'S DESIGN, LLC,

      Plaintiff,

v.

ZENACON, LLC,
STEVEN VERONA,
GEEKY BABY, LLC,
IDEA VILLAGE PRODUCTS CORP.,

      Defendants.

_____

ZENACON, LLC,

      Third Party Plaintiff,

v.

CHEONG CHOON NG,

      Third Party Defendant.

Case No. 2:13-cv-13568
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER DENYING STEVEN VERONA, ZENACON, LLC, AND
GEEKY BABY, LLC'S MOTION TO DISMISS [89]**

Over the past few years, looms that aid in linking together a number of small, colorful elastic bands to create bracelets, necklaces, and even handbags have been very popular, especially among school-aged children. Choon's Design Inc. ("Choon") introduced its version of this product, the Rainbow Loom, in late 2011. It has since sold over five million of them. This success allegedly spawned imitators. Choon is not flattered. It holds two utility patents with claims related to the structure of loom kits and methods for using the kits, United States Patent No. 8,485,565 ("the '565 Patent") and United States Patent No. 8,684,420 ("the '420 Patent"),

and has filed numerous lawsuits in this District alleging that competing looms infringe the claims of one or both of these patents. In this lawsuit, Plaintiff Choon asserts that Defendants Zenacon, LLC, Geeky Baby, LLC, Idea Village Products Corporation, and Steven Verona have, among other things, infringed claims of the '565 and the '420 Patents by producing and selling a product called the Fun Loom.

Now before the Court is Verona, Zenacon, and Geeky Baby's motion to dismiss Counts I–VI, the patent-infringement counts, of Choon's Fourth Amended Complaint. (Idea Village has not joined the motion.) Verona, Zenacon, and Geeky Baby's motion appears to be based on a novel argument. They argue that a recent ruling by the United States Patent Trial and Appeal Board estops Choon from making its infringement claims. Upon a challenge to certain claims of the '565 Patent brought by non-party LaRose Industries, LLC, the PTAB decided that it was reasonably likely that claims 1, 5–8, 10, and 11 of the '565 Patent were invalid. Choon then elected to disclaim those claims. As this resulted in no claims for the PTAB to evaluate for validity, the PTAB entered an adverse judgment against Choon. Verona, Zenacon, and Geeky Baby argue that a recently-adopted United States Patent and Trademark Office regulation estops Choon from taking any action inconsistent with the PTAB's judgment, and, because the patent claims asserted by Choon in this case are not "patentably distinct" from those adjudged by the PTAB, Choon is estopped from asserting infringement in this case.

Having been advised by the parties' briefing and oral argument, the Court will DENY Verona, Zenacon, and Geeky Baby's motion to dismiss Counts I–VI of the Fourth Amended Complaint. As detailed below, the Court finds that it is plausible that one skilled in the art—whom Verona, Zenacon, and Geeky Baby have not defined—would not find the patent claims that Choon asserts in this lawsuit to have been obvious in view of those the PTAB adjudged.

2

**I.**

**A.**

The following is a brief overview of the two patents in suit.

On July 16, 2013, the United States Patent and Trademark Office issued the '565 Patent, titled "Brunnian Link Making Device and Kit." (Dkt. 81, 4th Am. Compl. Ex. E, '565 Patent.) Ng is the named inventor. ('565 Patent at 1.) Choon owns the '565 Patent by way of assignment. (4th Am. Compl. ¶ 34.)

Claim 1 of the '565 Patent is an apparatus claim directed to "kits for creating an item consisting of a series of links" comprising of "a base," "at least one pin bar supported by the base," the pin bar including a number of pins, each pin "including a top flared portion for holding a link in a desired orientation and an opening on a front side." ('565 Patent col. 5 ll. 10–16.)[1] A picture of an embodiment of bases 12, pin bars 14, and pins 26, along with a picture of how a pin bar might couple with a base, helps understand the invention of claim 1:



('565 Patent Figs. 1, 5A.) Claim 11, which is a dependent of claim 1, adds that "the series of links comprise a series of Brunnian links." ('565 Patent col. 6, ll. 5–6.) The specification defines

---

[1] Any gloss on claim terms provided in this opinion is solely for the purpose of resolving the pending motion to dismiss (Dkt. 89)—this case has not yet progressed to claim construction.

3

Brunnian link as "a link formed from a closed loop doubled over itself to capture another closed loop to form a chain." ('565 Patent col. 1 ll. 27–29.) Claim 9, which is a dependent of claim 1, discloses "a clip for securing ends of the series of links together." ('565 Patent col. 6 ll. 1–2.) Below are images of a clip and a series of Brunnian links:



('565 Patent Figs. 3, 16.)

The '565 Patent also includes an independent method claim, claim 12, involving steps of "assembling at least two elastic bands across adjacent pins," "capturing one end of an elastic band and pulling the end over and onto an adjacent pin while engaged with another elastic band," and "capturing and pulling subsequent ends over until a desired link length and configuration is obtained." ('565 Patent col. 6 ll. 7–18.) Claim 13, a dependent of claim 12, adds that "a second of the at least two elastic bands is placed atop one end of the first of the at least two elastic bands on a common pin." ('565 Patent col. 6 ll. 19–21.) And claim 14, a dependent of claim 13, further adds, "wherein capturing one end of the elastic band includes using a hook tool reaching into an access groove of the pin to extend below the top most elastic band and grasp a bottom elastic band with the hook tool." ('565 Patent col. 6 ll. 22–26.) Another picture is helpful:



('565 Patent Figs. 14A–14C.)

By using the kit of claim 1 and the method of claim 14, one can create a wearable item (e.g., piece of jewelry) made of a series of elastic-band, Brunnian links:



('565 Patent Fig. 2.) As noted, making such items has become a very popular hobby, especially among children. *See* Catherine Kavanaugh, *Rainbow Loom Creator Weaves Success From Playtime Inspiration*, Crain's Detroit Business (Dec. 15, 2013).

About eight months after Choon filed this lawsuit, in April 2014, the USPTO issued a second utility patent, United States Patent No. 8,684,420 ("the '420 Patent"). (4th Am. Compl. ¶¶ 37, Ex. F, '420 Patent.) Choon also owns the '420 Patent by way of assignment. (4th Am. Compl. ¶ 39.) With the exception of removing discussion of a "pin bar" from the last two sentences of the Abstract, the '420 Patent, as a continuation, shares the same specification as the

'565 Patent. As that modification might suggest, the claims of the '420 Patent do not include a pin bar. (*See* '420 Patent cols. 5–6.)

For example, Claim 1 of the '420 Patent is directed to "[a] device for creating an item consisting of a series of links" comprised of "a base" and a number of "pins supported on the base," with the pins comprising "rows of offset pins spaced apart and extending upward from the base." ('420 Patent col. 5 ll. 18–26.) The '420 Patent includes three other independent claims, including Claim 14, which is directed to "[a] method of assembling a kit for creating a linked item" with the step of "supporting a plurality of pins to define a desired spatial relationship between pins." ('420 Patent col. 6 ll. 23–26.)

## B.

In December 2013, non-party LaRose Industries, LLC, then accused of patent infringement by Choon, filed a petition for *inter partes* review with the United States Patent Trial and Appeal Board. LaRose alleged that claims 1 and 5–14 of the '565 Patent were invalid as they were anticipated or made obvious by prior inventions. *LaRose Indus., LLC v. Choon's Design, LLC*, No. IPR2014-00218, 2014 WL 2159033, at *1 (PTAB May 20, 2014).

On May 20, 2014, the PTAB preliminarily agreed in part with LaRose. *See LaRose*, 2014 WL 2159033, at *2. In particular, it instituted proceedings on claims 1, 5–8, 10, and 11 of the '565 Patent, finding that LaRose had demonstrated a "reasonable likelihood" that those claims were obvious in view of the loom invention disclosed in UK Patent App. No. GB 2147918 A ("Pugh"). *Id.* at *2, 8–12. But the PTAB did not institute *inter partes* review of claims 9 and 12–14 of the '565 Patent. *Id.* at *2. Notably, LaRose did not ask the PTAB to decide whether claims 12–14 of the '565 Patent were anticipated by or obvious in view of Pugh. *See id.* at *1.

About a month later, before the *inter partes* review proceeded to trial, Choon disclaimed claims 1, 5–8, 10, and 11 pursuant to 37 C.F.R. § 1.321(a). (Dkt. 76, Pl.'s Supp. Br. to Defs.' Mot. to Stay, Ex. 2.) As a result of Choon's disclaimer, there were no longer any claims at issue in the *inter partes* review for which the validity was still in question. Choon and LaRose thus filed a joint motion asking the PTAB to enter an adverse judgment against Choon. (Licensor Defs.' Mot. to Dismiss Ex. A, Jt. Mot. for Adverse J. in LaRose IPR.) The PTAB did so on June 7, 2014. *LaRose Indus., LLC v. Choon's Design, LLC*, IPR2014-00218, 2014 WL 3369213, at *1 (June 7, 2014).

### C.

On July 3, 2014, Choon filed its Fourth Amended Complaint. (Dkt. 81.) There, Choon alleges that Zenacon, Verona, Geeky Baby, and Idea Village, "[a]fter taking note of Choon's great success, . . . decided to take action, producing their own loom kit, the Fun Loom." (4th Am. Compl. ¶ 16.) The following are images of a Fun Loom:

 

(4th Am. Compl. Ex. C, Print Out of funloom.com; Dkt. 114, Pl.'s Mot. for Prelim. Inj. Ex. 8.) Choon has acknowledged what is suggested by the picture: that the Fun Loom "is a one-piece loom." (Dkt. 115, Pl.'s Sealed Mot. Prelim. Inj. at 7.) Choon maintains, however, that "the one-piece construction of the Fun Loom does not avoid the patent claims," (*id.* at 8), including claims 9 and 14 of the '565 Patent (*id.* at Ex. 8, Chart Comparing Fun Loom to '565 Patent Claims).

Choon also pleads that Verona, Zenacon, and Geeky Baby sold both the Fun Loom and Choon's Rainbow Loom on their websites. (4th Am. Compl. ¶ 22.) Further, these three Defendants have allegedly granted Defendant Idea Village a license to sell the competing Fun Loom. (*Id.* ¶ 23.) Although it relates more to Choon's trademark claims not now at issue, Choon says that Zenacon, Geeky Baby, and Idea Village used various domain names, including rainbow-loom.com and rainbowlooms.com, to sell their product. (4th Am. Compl. ¶¶ 25–26.)

In Counts I, II, and III of their Complaint, Choon asserts that all four Defendants have directly infringed, contributorily infringed, and actively induced infringement of claims 9 and 14 of the '565 Patent, respectively. (*See* 4th Am. Compl. ¶¶ 49–68.)[2] In Counts IV, V, and VI, Choon asserts that all four Defendants have directly infringed, contributorily infringed, and actively induced infringement of "claims 1–7 and 9–16" of the '420 Patent, respectively. (4th Am. Compl. ¶¶ 69–95.)

Verona, Zenacon, and Geeky Baby (the "Licensor Defendants") move to dismiss these six patent infringement counts pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 89, Licensor Defendants' Mot. to Dismiss.)

## II.

Where, as here, a defendant moves to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must decide whether the assertions of fact (and reasonable inferences drawn from them, *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)), permit "the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this plausibility threshold is more than

---

[2] Although the Fourth Amended Complaint as filed alleges infringement of "at least claims 9 and 12–18" of the '565 Patent, Choon has since disclaimed claims 12, 13, and 15–18, and thus the only remaining claims of the '565 Patent are 9 and 14. (Dkt. 105, Jt. Supp. Br. to Defs.' Mot. to Dismiss at 2.)

"sheer possibility that a defendant . . . acted unlawfully," it is not a "'probability requirement.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" its claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

## III.

### A.

Choon first contends that the Licensor Defendants' motion to dismiss is improperly brought pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 94, Pl.'s Resp. to Licensor Defs.' Mot. to Dismiss at 8.) Choon points out that the Licensor Defendants rely on "documents relating to Choon's disclaimers," but that, under Rule 12(b)(6), "[t]he Court cannot rely on the evidence of the disclaimed claims as they are not part of the original filing." (Pl.'s Resp. at 9.) In support of its argument, Choon quotes *Scott v. Ambani*, 577 F.3d 642 (6th Cir. 2009): "'[W]hen considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court cannot consider records or other documents outside the four corners of a plaintiff's complaint.'" (Pl.'s Resp. at 8 (quoting *Scott*, 577 F.3d at 649).)

Choon misquotes—and from a dissent. *Scott*, 577 F.3d at 649 (McKeague, J., concurring in part and dissenting in part). The quote in fact begins with the word "Normally" and is followed by these statements: "There are exceptions, however, to this general rule. Scott attached to and cited in his complaint a number of medical records. 'When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein.'"

9

*Scott*, 577 F.3d at 649 (McKeague, J.) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

It is well-established that on a Rule 12(b)(6) motion, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

Still, Choon's concern about the applicability of Rule 12(b)(6) raises several valid questions about the procedural propriety of the Licensor Defendants' motion. The first is whether the materials relied upon by the Licensor Defendants can be considered under the proper standard as articulated in *Bassett*. As will become apparent below, of the evidence cited by the Licensor Defendants, the Court relies only on Choon's disclaimer of claims 1, 5–8, 10, and 11 of the '565 Patent in addressing the merits of Licensor Defendants' motion. (Dkt. 76, Pl.'s Supp. Resp. Br. to 1st Mot. to Stay Ex. 2, Disclaimer in '565 Patent.) Not only is this disclaimer part of the *inter partes* review record, which is a matter of public record, *see* Patent Review Processing System, https://ptabtrials.uspto.gov (last visited Jan. 18, 2015), the disclaimer is also reflected in the *inter partes* review certificate now appended to the '565 Patent, *see* 35 U.S.C. § 318(b); USPTO Patent Full-Text and Image Database, http://patft.uspto.gov/netahtml/PTO/srchnum.htm (last visited Jan. 18, 2015). Indeed, 35 U.S.C. § 253 provides: "A patentee . . . may . . . make disclaimer of any complete claim . . . . Such disclaimer shall be in writing, and recorded in the Patent and Trademark Office; and it shall thereafter be considered as part of the original patent to the extent of the interest possessed by the disclaimant and by those claiming under him." Accordingly, the Court may consider the fact that Choon's disclaimed claims 1, 5–8, 10, and 11

2013-cv-13568-LJM-RSW   Doc # 126   Filed 02/09/15   Pg 11 of 32   Pg ID 3554

of the '565 Patent on a Rule 12(b)(6) motion. *See Bassett*, 528 F.3d at 430; *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 304 (D. Del. 2013) ("Because exhibit A contains the reexamination file of the '045 patent, which is publicly available through the PTO's Public Patent Application Information Retrieval ('PAIR') database, it is a public document that the court may rely upon in deciding this motion to dismiss.").

Second, Licensor Defendants do not directly argue that an element of Choon's patent-infringement counts lacks factual matter permitting a court to infer that they are liable for infringement. *See Iqbal*, 556 U.S. at 678. Instead, the Licensor Defendants argue estoppel under 37 C.F.R. § 42.73(d)(3)—an affirmative defense. *See Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1370 (Fed. Cir. 2013) ("[A]ssignor estoppel is a form of estoppel, and with rare exception, estoppel is a shield; it is an affirmative defense, not a claim for relief on its own[.]"). And "a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Still, a Rule 12(b)(6) motion may be a proper device to litigate an affirmative defense if the complaint provides for it. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."); *Cataldo*, 676 F.3d at 547 ("[S]ometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, as it is here, dismissing the claim under Rule 12(b)(6) is appropriate."). As Choon must rely on the '565 Patent to assert infringement, and the public record associated with that patent, indeed now appended to the patent itself, includes a notice that Choon has disclaimed claims 1, 5–8, 10, and 11, Licensor Defendants are not barred from attempting to dismiss the patent-infringement counts under Rule 12(b)(6).

Lastly, Choon says that determining whether the patent claims it asserts in this case are obvious in view of those it disclaimed involves "several factual issues" including the patented invention's commercial success. (Pl.'s Resp. at 9, 16.) Choon says it has evidence of "great" commercial success that this Court should consider in making the obviousness determination. (Pl.'s Resp. at 16). But Choon does not explain how the commercial success of the Rainbow Loom would help to distinguish the disclaimed and non-disclaimed claims: both presumably read on the successful product. Additionally, as detailed below, the Court finds in Choon's favor regarding patentable distinctness even without Choon's evidence of commercial success.

In short, the Court will consider the Licensor Defendants' motion under Rule 12(b)(6).

## B.

Licensor Defendants' novel argument, although it could have been more clearly articulated, goes like this: (1) Choon, acknowledging the PTAB's preliminary finding of obviousness, disclaimed claims 1, 5–8, 10, and 11 of the '565 Patent; (2) based on Choon's disclaimer, the PTAB entered an adverse judgment against Choon on claims 1, 5–8, 10, and 11 of the '565 Patent; (3) the claims Choon asserts in this lawsuit (claims 9 and 14 of the '565 Patent and claims 1–7 and 9–16 of the '420 Patent) are nothing more than obvious variations on those adjudged claims, i.e., they are not "patentably distinct" from the adjudged claims; (4) a recently-adopted federal regulation "preclude[s] [Choon] from taking action inconsistent with the adverse judgment," 37 C.F.R. § 42.73(d)(3); (5) Choon is thus estopped from asserting infringement of claims 9 and 14 of the '565 Patent and claims 1–7 and 9–16 of the '420 Patent; and (6) therefore, Choon's patent-infringement counts are implausible under *Twombly* and *Iqbal*. (*See* Licensor Defs.' Mot. at Pg ID 1892, 1895, 1902.) This type of argument, or any application of the recently-promulgated 37 C.F.R. § 42.73(d)(3), is not found in the case law.

Aside from the Rule 12(b)(6) arguments addressed above, Choon's only response is that the remaining claims of the '565 Patent and the '420 Patent are patentably distinct from those adjudged by the PTAB. (Pl.'s Resp. at 9–20.) By attacking only this necessary premise of the Licensor Defendants' argument, Choon concedes a number of others.

For one, Choon apparently agrees that the phrase "action inconsistent with the adverse judgment" in 37 C.F.R. § 42.73(d)(3) includes actions taken in a federal lawsuit. *But see* 37 C.F.R. § 42.73(d)(3)(i), (ii) (pertaining to preclusion in "obtaining in any patent"); Rules of Practice for Trials Before the Patent Trial and Appeal Board, 77 Fed. Reg. 48,612, 48,649 (Aug. 14, 2012) (explaining that USPTO had authority to promulgate § 42.73(d)(3) because it was statutorily "required to prescribe regulations setting forth the relationship between the review and other proceedings in the Office (e.g., examination)").[3]

Choon also fails to contest that the adverse judgment entered by the PTAB is equivalent to a holding that claims 1, 5–8, 10, and 11 of the '565 Patent were invalid as obvious in light of the prior art even though Choon's disclaimer was made at a time when the PTAB had found only

---

[3] In full, 37 C.F.R. § 42.73(d)(3) reads,

(d) Estoppel. . . .

(3)  Patent applicant or owner. A patent applicant or owner is precluded from taking action inconsistent with the adverse judgment, including obtaining in any patent:

(i) A claim that is not patentably distinct from a finally refused or canceled claim; or

(ii) An amendment of a specification or of a drawing that was denied during the trial proceeding, but this provision does not apply to an application or patent that has a different written description.

a likelihood of obviousness and the Board's judgment mentions neither obviousness specifically nor invalidity generally. (*See* Dkt. 89, Exs. A, B.)

Finally, Choon tacitly concedes that the proper method of analyzing estoppel under 37 C.F.R. § 42.73(d)(3) is to determine whether the adjudged claims and the claims asserted in this case are "patentably distinct"—even though the patentably distinct test is drawn from a different context. It has been used to apply the obviousness-type double patenting doctrine, a doctrine justified by a very different rationale than that underlying estoppel. *Compare Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001) ("[T]he fundamental reason for the rule [of obviousness-type double patenting] is to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about." (internal quotation marks omitted)), *with Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent. . . . If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies."). More specifically, double-patenting issues arise when the owner of a patent seeks to obtain, or has obtained, a second patent claiming the same invention.  To prevent what would amount to an extension of the patent term if the claims of the second, later-issuing patent were not patentably distinct from the claims of the first, courts will compare the claims of the two patents and determine if the second patent claims an invention not obvious in view of the first. That is entirely different from determining whether a patent owner is estopped from asserting certain claims in a patent when other claims in the same patent have been adjudged invalid. Indeed, during oral argument on the

14

present motion, counsel for the Licensor Defendants could offer no explanation for the propriety
or applicability of the "patentably distinct" analysis.

Regardless of the merit of these three premises, Choon has forfeited any challenge and
the Court assumes—without deciding—their validity. The sole issue before the Court, therefore,
is whether the remaining claims of the '565 Patent and the'420 Patent are patentably distinct
from those adjudged by the PTAB. Before deciding the issue, the Court must determine what
burden the Licensor Defendants must carry to succeed in their motion. The parties have not
addressed this issue.

A defendant moving pursuant to Rule 12(b)(6) has the burden of establishing that
plaintiff's complaint does not permit the plausible inference that the defendant is liable for the
conduct alleged. *See Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014). Here, Licensor
Defendants maintain that Choon's patent infringement claims are implausible because 37 C.F.R.
§ 42.73(d)(3) estops Choon from asserting infringement. (*See* Licensor Defs.' Mot. at 10, 11,
24.) Given the concessions by Choon just discussed, this means that the Licensor Defendants
need to show that it is implausible that claims 9 and 14 of the '565 Patent and claims 1–7 and 9–
16 of the '420 Patent are patentably distinct from claims 1, 5–8, 10, and 11 of the '565 Patent.
Although the patentably distinct analysis can be broken down into two steps—construe the
claims in the earlier patent and in the later patent and identify the differences, and then determine
whether those differences render the two sets of claims patentably distinct, *Sun Pharm. Indus.,
Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1385 (Fed. Cir. 2010)—the ultimate question is whether
one skilled in the art would find the challenged claims of the later patent (or application) obvious
in view of the claims of the earlier patent, *see Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
689 F.3d 1368, 1376 (Fed. Cir. 2012) ("A later patent claim is not patentably distinct from an

15

earlier claim if the later claim is obvious over, or anticipated by, the earlier claim." (internal quotation marks omitted)). So, to succeed on its motion, the Licensor Defendants must ultimately show that it would be implausible for a person having ordinary skill in the art to find the inventions of claims 9 and 14 of the '565 Patent and claims 1–7 and 9–16 of the '420 Patent not obvious in view of claims 1, 5–8, 10, and 11 of the '565 Patent. As noted, the Court has doubts about whether this is the appropriate analysis to determine whether estoppel under 37 C.F.R. § 42.73(d)(3) applies, but because this is what the parties argued, the Court will proceed to determine whether the parties have met their respective burdens under this framework. The Court turns now to this inquiry, beginning with claim 14 of the '565 Patent.

## C.

Although the Licensor Defendants compare the language of allegedly infringed claim 14 with that of PTAB-adjudged claims 1, 8, 10, and 11 to demonstrate that the differences are merely obvious variations, they also say they win on claim 14 without resort to that detailed analysis. (*See* Licensor Defs.' Mot. at 4, 13–14; Ex. E, '565 Claim Chart.) Choon also makes a general argument that does not involve examining claim language. (Pl.'s Resp. at 10–11; Ex. 5, '565 Resp. Claim Chart.) Both paint too broadly.

## 1.

Choon asserts that because the PTAB found that claims 1, 5–8, 10, and 11 were likely invalid as obvious, but did not reach that conclusion with respect to claim 14, the PTAB found claim 14 patentably distinct from claims 1, 5–8, 10, and 11. (Pl.'s Resp. at 10–11.) This argument has facial appeal. On the public record before the Court, however, the inference Choon draws is not certain.

16

In the *inter partes* review proceeding, LaRose only challenged, and the PTAB only assessed, the validity of claim 14 against one primary reference (i.e., one primary source of prior art): U.S. Patent No. 5,241,742 ("MacBain"). *LaRose v. Choon's Design, LLC*, No. IPR2014-00218, 2014 WL 2159033, at *1 (PTAB May 20, 2014). Although the PTAB found that claim 14 was not obvious in view of MacBain (in combination with a number of secondary references), it concluded that *none* of the challenged claims, including claims 1, 5–8, 10, and 11, were obvious in view of MacBain (combined with other references). *LaRose*, 2014 WL 2159033, at *16–18. Instead, the PTAB held claims 1, 5, 8, and 10–11 likely obvious in view of an entirely different reference, UK Patent App. No. GB 2147918 A ("Pugh"). *See id.* at *8–11. The PTAB was not asked and did not assess claim 14 against Pugh. *See id.* at *8–11. Thus, to assert, as Choon does, that the PTAB found claim 14 patentably distinct from claims 1, 5, 8, and 10–11 because it found claims 1, 5, 8, and 10–11, likely obvious but not claim 14, ignores the fact that those two findings were reached by making different comparisons. Stated differently, it may, but does not necessarily, follow that claim 14 is different than the disclaimed claims—it may be that claim 14 is also obvious in view of Pugh. The PTAB never said one way or the other. And Choon makes no argument regarding the similarities or differences of MacBain and Pugh. Moreover, the PTAB's opinion was only preliminary.

Accordingly, Choon has not persuaded the Court that the PTAB has necessarily decided that claim 14 is patentably distinct from claims 1, 5–8, 10, and 11.[4]

---

[4] At oral argument, Choon asserted that in petitioning the PTAB for a rehearing, LaRose made a patentably distinct argument. This is incorrect. *See generally* Pet.'s Request for Rehr'g, *LaRose Indus., LLC v. Choon's Design, LLC*, IPR2014-00218 (PTAB filed June 3, 2014), *available at* Patent Review Processing System, IPR2014-00218, https://ptabtrials.uspto.gov (last visited Feb. 2, 2015).

17

**2.**

The Licensor Defendants' generalized argument is also unpersuasive. They say that the Federal Circuit (and district courts) have "routinely found" that claims reciting a method for using an apparatus, such as allegedly infringed claim 14, "are not patentably distinct from claims directed to the apparatus," such as adjudged claim 1, where the patent specification discloses how to use the apparatus in the manner set forth in the method claim. (Licensor Defs.' Mot. at 14 (citing cases).) But the precedents are more nuanced than Licensor Defendants suggest.

Licensor Defendants are correct that the Federal Circuit has looked to the patent specification in performing a patentably-distinct analysis. In *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003), the Federal Circuit, quoting a 1931 opinion from its predecessor court, stated, "'It would shock one's sense of justice if an inventor could receive a patent upon a composition of matter, setting out at length in the specification the useful purposes of such composition, manufacture and sell it to the public, and then prevent the public from making any beneficial use of such product by securing patents upon each of the uses to which it may be adapted.'" *Id.* at 1386 (quoting *In re Byck*, 48 F.2d 665, 666 (C.C.P.A. 1931)). Then in *Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 518 F.3d 1353, 1363 (Fed. Cir. 2008), the Court stated, "To the extent that Pfizer contends that we may not rely on the teachings of the specification or claims in the '165 patent to reject the claims of the '068 patent [as not patentably distinct], we disagree. There is nothing that prevents us from looking to the specification to determine the proper scope of the claims." In *Sun Pharmaceuticals Industries, Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1386 (Fed. Cir. 2010): "the specification's disclosure may be used to determine whether a claim merely defines an obvious variation of what is earlier disclosed and claimed, to learn the meaning of claim terms, and to interpret the coverage of a

18

claim." And, very recently: "[I]t is . . . well settled that we may look to a reference patent's disclosures of utility to determine the question of obviousness. . . . We have repeatedly approved examination of the disclosed utility of the invention claimed in an earlier patent to address the question of obviousness." *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust*, 764 F.3d 1366, 1380 (Fed. Cir. 2014).

Nonetheless, the Court does not believe that it should simply look to the portion of the specification teaching how the kit of claim 1 might be used, e.g., Figures 14A–14C reproduced at the outset of this opinion, and then ask whether that disclosure renders obvious the method of claim 14. For one, unlike the inventions at issue in this case, each of *Byck*, *Geneva*, *Pfizer*, *Sun*, and *Abbvie* involved a chemical compound. *See Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 689 F.3d 1368, 1380 (Fed. Cir. 2012) ("*Byck*, *Geneva*, *Pfizer*, and *Sun* . . . address the situation in which an earlier patent claims a compound, disclosing the utility of that compound in the specification, and a later patent claims a method of using that compound for a particular use described in the specification of the earlier patent. Furthermore, in each of those cases, the claims held to be patentably indistinct had in common the same compound or composition—that is, each subsequently patented 'use' constituted a, or the, disclosed use for the previously claimed substance." (internal citation and quotation marks omitted)); *Sun*, 611 F.3d at 1387 ("Both *Geneva* and *Pfizer* make clear that, where a patent features a claim directed to a compound, a court must consider the specification because the disclosed uses of the compound affect the scope of the claim for obviousness-type double patenting purposes."); *Abbvie*, 764 F.3d at 1368 (providing that both patents involved in the double-patenting analysis were "directed towards methods of treating rheumatoid arthritis by co-administering two drugs").

19

For still another, the Federal Circuit has never overruled, but instead has reaffirmed, the long-standing rule that the specification of the earlier patent cannot be used to render obvious the claims of the later patent in a patentably distinct analysis:

> As a general rule, obviousness-type double patenting determinations turn on a comparison between a patentee's earlier and later claims, with the earlier patent's written description considered only to the extent necessary to construe its claims. This is so because the nonclaim portion of the earlier patent ordinarily does not qualify as prior art against the patentee and because obviousness-type double patenting is concerned with the improper extension of exclusive rights—rights conferred and defined by the *claims*. The focus of the obviousness-type double patenting doctrine thus rests on preventing a patentee from claiming an obvious variant of what it has previously *claimed*, not what it has previously *disclosed*.

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 689 F.3d 1368, 1378–79 (Fed. Cir. 2012) (describing *Byck*, *Geneva*, *Pfizer*, and *Sun* as representing "a limited exception to this customary framework"); *see also Abbvie*, 764 F.3d at 1380 ("It is true that a reference patent's specification cannot be used as prior art in an obviousness-type double patenting analysis."); *Geneva*, 349 F.3d at 1385 ("Because nonstatutory double patenting compares earlier and later claims, an earlier patent's disclosure is not available to show nonstatutory double patenting.").

In determining the role the specification plays in a patentably distinct analysis, the Court finds instructive *Application of Vogel*, 422 F.2d 438 (C.C.P.A. 1970), one of the seminal cases in this area, and a case relied upon just last year by the Federal Circuit to support the proposition that "it is . . . well settled that we may look to a reference patent's disclosures of utility to determine the question of obviousness," *Abbvie*, 764 F.3d at 1380. In *Vogel*, the patent office had rejected certain claims directed to a process of packaging meat. *Vogel*, 422 F.2d at 439–40. The patent office thought that the applicant's earlier pork patent, when combined with another reference, rendered the later meat-packaging claims obvious and thus issued a double-patenting

20

rejection. *Id.* at 440–41. In addressing the applicant's appeal of this rejection, the predecessor court to the Federal Circuit stated,

> Does any claim in the application define merely an obvious variation of an invention disclosed and claimed in the patent? In considering the question, the patent disclosure may not be used as prior art. This does not mean that the disclosure may not be used at all. As pointed out above, in certain instances it may be used as a dictionary to learn the meaning of terms in a claim. *It may also be used as required to answer the . . . question above.*

*Vogel*, 422 F.2d at 441–42 (emphasis added) (internal citation omitted). Although the emphasized sentence—that the disclosure "may be used as required" to decide whether "any claim in the application define[s] merely an obvious variation of an invention disclosed and claimed in the patent"—suggests a liberal use of the specification in performing a patentably distinct analysis, the appellate court went on to explain that "only the disclosure *of the invention claimed* in the patent may be examined." *Id.* at 442 (emphasis added). Indeed, in applying the test it articulated to the facts before it, the *Vogel* court, noting that the claims in the earlier patent were directed to pork but not meat, expressly declined to rely on the portion of the specification "with certain broad assertions about meat sausages." It explained, "These assertions do not support the patent claims. The patent claims recite 'pork' and 'pork' does not read on 'meat.' To consider these broad assertions would be using the patent as prior art, which it is not." *Id.* at 442. This use of the specification is in accord with statements in more recent cases. *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1385 (Fed. Cir. 2010) ("In our obviousness-type double patenting analysis, we determined that to ascertain the scope of the earlier patent's claim to the compound itself, we had to examine the specification of the earlier patent, including the compound's disclosed utility."); *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 518 F.3d 1353, 1363 n.8 (Fed. Cir. 2008) ("There is nothing that prevents us from looking to the specification to determine the proper scope of the claims."); *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349

F.3d 1373, 1385 (Fed. Cir. 2003) ("The challenge of a double patenting analysis, however, is to understand the scope of the compared claims. In this case, for instance, claim 1 of the '720 patent is drawn to a compound having a certain physical property. Standing alone, that claim does not adequately disclose the patentable bounds of the invention. Therefore, this court examines the specifications of both patents to ascertain any overlap in the claim scope for the double patenting comparison.").

Accordingly, whether a claim of the '565 Patent is patentably distinct from claims 1, 5–8, 10, and 11 is not simply answered by noting that claim 1 claims a kit, claim 14, for example, claims a method of using a kit, and the specification (especially Figures 14A–C and the corresponding description) teaches how a kit is to be used. Instead, the Court turns to the language of the *claims* to determine if one skilled in the art would find a claim of the '565 Patent obvious in view of claims 1, 5–8, 10, and 11. In so doing, the Court looks to the specification only if necessary to determine the scope of claims 1, 5–8, 10, and 11.

**3.**

Upon review of claims 1, 8, 10, and 11—the four PTAB-adjudged claims that the Licensor Defendants assert as patentably indistinct from claim 14 (Licensor Defs.' Mot. Ex. E, '565 Claim Chart at 2–3)—the Court concludes that there is no need to resort to the specification to determine their claim scope. Unlike claim 14, claims 1, 8, 10, and 11 are directed toward an apparatus, specifically, "kit[s] for creating an item consisting of a series of links." (*See* '565 Patent col. 5, ll. 10–11.)[5] The claims' basic elements—a "base," "pin bar," "pins," "hook," and

---

[5] In full, claims 1, 8, 10, 11, and the definition of Brunnian link are as follows:

1. A kit for creating an item consisting of a series of links, the device comprising:

a base; and

"link"—do not require reference to the specification for purposes of determining whether they are patentably distinct from claim 14. Indeed, neither party has asked the Court to construe any claim terms. And even if some reference to the specification were necessary to understand, for example, the meaning of "pin bar," Licensor Defendants have put forth no convincing argument that, to conduct a patentably distinct analysis, it is necessary to consult those portions of the specification teaching how the kits might be used (e.g., Figures 14A–14C and associated disclosure). *See Vogel*, 422 F.2d at 442; *cf. Geneva*, 349 F.3d at 1385.

Adhering to the language of claims 1, 8, 10, and 11 then, three inventions are claimed. First, via claim 8, a kit for creating an item consisting of a series of links that includes a base, one or more pin bars supported on the base, the pin bar(s) including two or more pins, each pin having certain structural details including "an opening on a front side," and a hook adapted to extend into the access grove of the pins for capturing one end of a link. Second, via claim 10, a kit for creating an item consisting of a series of elastic-band links that includes a base, one or more pin bars supported on the base, the pin bar(s) including two or more pins, and with each pin

---

at least one pin bar supported on the base, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins.

8. The kit as recited in claim 1, including a hook adapted to extend into the access groove for capturing one end of a link.

10. The kit as recited in claim 1, wherein the series of links comprises a series of elastic bands.

11. The kit as recited in claim 1, wherein the series of links comprise a series of Brunnian links.

A Brunnian link is a link formed from a closed loop doubled over itself to capture another closed loop to form a chain.

('565 Patent col. 1 ll. 27–29; col. 5 ll. 10–16, 40–41; col. 6 ll. 3–6.)

having certain structural details including an opening on a front side. And third, via claim 11, a kit for creating an item consisting of a series of Brunnian links (where a link is formed from a closed loop doubled over itself to capture another closed loop) that includes a base, one or more pin bars supported on the base, the pin bar(s) including two or more pins, and with each pin having certain structural details including an opening on a front side.

In comparison to these three kits, the invention of claim 14 is the following method:

A method of creating a linked item comprising the steps of:

supporting at least one pin bar including a plurality of pins to a base to define a desired relative special relationship between at least two adjacent pins;

assembling at least two elastic bands across adjacent pins[,] *wherein a second of the at least two elastic bands is placed atop one end of the first of the at least two elastic bands on a common pin*;

capturing one end of an elastic band and pulling the end over and onto an adjacent pin while engaged with another elastic band[,] *wherein capturing one end of the elastic band includes using a hook tool reaching into an access groove of the pin to extend below the top most elastic band and grasp a bottom elastic band with the hook tool*; and

capturing and pulling subsequent ends over until a desired link length and configuration is obtained.

('565 Patent col. 6 ll. 8–26 (unemphasized language inherited from claim 12, first emphasis inherited from claim 13).)

There are sufficient differences between the method of claim 14 and the kits of claims 1, 8, 10, and 11 such that it is *plausible* that one skilled in the art would not find claim 14 obvious in view of claims 1, 8, 10, and 11. The inventions of PTAB-adjudged claims 1, 8, 10, and 11 would provide to one skilled in the art a kit for creating an item consisting of a series of elastic-band, Brunnian links, the kit complete with a base, pin bars, flared pins to hold the elastic bands, and a hook tool for capturing an elastic band via a pin's access grove. In essence, one skilled in

24

the art would have at his fingertips a Rainbow Loom—but without the instruction manual. In contrast, claim 14 sets forth particular steps for creating a series of Brunnian links: placing two elastic bands across adjacent pins, where one end of one of the bands is placed atop one end of the other on the same pin, using a hook tool to reach into the access groove of the common pin below the top elastic band to grasp the bottom one, pulling the captured end of the band over and onto an adjacent pin while the captured band is engaged with the other, and repeating until reaching a desired link length. Licensor Defendants have not shown that this is the only method to create a Brunnian–link chain with the kit disclosed by claims 1, 8, 10, and 11. And, at this early stage of the case, the Court is not prepared to say that it is implausible that one skilled in the art would find the particular method set out in claim 14 unobvious with only the kits of claims 1, 8, 10, and 11, unaccompanied by instructions for their use, in hand—especially given that the Licensor Defendants have not even defined the person having ordinary skill in the art and Choon indicated at oral argument that it may proffer expert testimony on whether claim 14 is patentably distinct from claims 1, 8, 10, and 11.

As claim 14 is plausibly patentably distinct from claims 1, 8, 10, and 11, it is plausible that Choon is not estopped from asserting claim 14 in this suit. It follows that Counts I, II, and III, insofar as they rely on claim 14 of the '565 Patent, will not be dismissed for failure to state a claim upon which relief may be granted.

## D.

Licensor Defendants also seek to dismiss Counts I, II, and III of the Complaint to the extent that they rely on claim 9 of the '565 Patent. Claim 9 is the kit of claim 1, but with the addition of "a clip for securing ends of the series of links together." Licensor Defendants first argue that Choon is estopped from asserting infringement based on this claim because it is not

patentably distinct from a combination of PTAB-adjudged claims 1, 10, and 11 of the '565 Patent. (Licensor Defs.' Mot. at 12.) According to Licensor Defendants, "Using a clip to secure the ends of a linked item recited in invalid claims 1, 10, and 11 was certainly within the ordinary creativity of a person [of] ordinary skill in the relevant art." (*Id.*)

Choon, relying on the PTAB's finding that claims 1, 10, and 11 were likely obvious, but that claim 9 was not, argues that the PTAB has already decided that claim 9 is patentably distinct from claims 1, 10, and 11. (Pl.'s Resp. at 10–11.) Choon also asserts that because the PTAB found that claims 10 and 11 "do not further limit claim 1," claims 10 and 11 are a nullity and should be excluded from the patentably distinct analysis. (Pl.'s Resp. at 12–13, Ex. 5, '565 Resp. Claim Chart at 1.)

The Court declines to address these two arguments because it finds, independent of the PTAB's preliminary opinion, that it is plausible that that one skilled in the art would not find claim 9 obvious in view of the claims 1, 10, and 11. Claims 1, 10, and 11 provide to one skilled in the art a kit for making a series of Brunnian links made of elastic bands. It is plausible, however, that a clip would not be an obvious addition to such a kit. One can imagine items that might be made with a series of Brunnian-linked elastic bands that do not require ends of the series to be connected. A jump rope or a mat, as examples. It is also reasonable to infer that one skilled in the art might have limited himself to securing the ends of the series of links with something other than a clip—say, one or more of the elastic bands—to create items such as rings, bracelets, or necklaces. Indeed, it appears that the bracelet-like item disclosed in the '565 Patent's specification does not show any clip:

26



FIG.2

('565 Patent Fig. 2.) As such, Licensor Defendants have not shown that it is implausible that one skilled in the art would not find the invention of claim 9 obvious in view of the inventions of claims 1, 10, and 11.

Licensor Defendants put forth a second argument for why Choon is estopped from asserting infringement of claim 9 of the '565 Patent. They point out that Choon has disclaimed claim 8 of the '420 Patent and that claim 8 recited a kit with "at least one connector for connecting ends of the series of links, wherein the connector includes inward facing ends for trapping each link within an inner area of the connector." (Licensor Defs.' Mot. at 12–13; *see also* '420 Patent col. 6 ll. 4–7.) By making this disclaimer, say Licensor Defendants, "Choon has resolved any doubt, and has in fact confirmed, that the 'clip' of claim 9 is a nonobvious modification of the device recited in the recently invalidating claims." (Licensor Defs.' Mot. at 13.)

Licensor Defendants' argument is unclear. To the extent they assert that Choon disclaimed claim 8 because it recognized that claim as obvious in view of the prior art, Licensor Defendants overlook the possibility that there might be other reasons for Choon to have disclaimed that claim. (*See* Pl.'s Resp. at 13–14.) But even if this is the only plausible reason for Choon's disclaimer, the fact that claim 8 of the '420 Patent was obvious in view of the prior art, coupled with the similarity of that claim with claim 9 of the '565 Patent, would only tend to

27

show that claim 9 is obvious in view of the *prior art*. But the sole basis of Licensor Defendants' motion to dismiss is that 37 C.F.R. § 42.73(d)(3) estops Choon from, in the language of that regulation, "taking action inconsistent with the adverse judgment." Yet "judgment" is limited to a written decision by the PTAB or the termination of a PTAB proceeding. *See* 37 C.F.R. § 42.2. And Choon did not disclaim claim 8 in the context of any PTAB proceeding: Choon's disclaimer was on June 25, 2014 (Licensor Defs.' Mot., Ex. D) whereas post-grant review of the '420 Patent was not sought until August 5, 2014 (Dkt. 105, Jt. Supp. Br. at 1). Accordingly, even if Choon were to assert claim 8 of the '420 Patent in this lawsuit, let alone claim 9 of the '565 Patent, it would not be 37 C.F.R. § 42.73(d)(3) that would bar that action.

Licensor Defendants also argue that "Choon dedicated the subject matter of claim 8 of the '420 Patent to the public when it . . . filed a statutory disclaimer of this claim pursuant to 35 U.S.C. § 253 and 37 C.F.R. § 1.321(a)." (Licensor Defs.' Mot. at 12.) Perhaps. *See 3V, Inc. v. CIBA Specialty Chemicals Corp.*, 587 F. Supp. 2d 641, 645 (D. Del. 2008) ("'Since all the claims have been disclaimed, the effect of plaintiff's action is the same as dedication of the patent to the public or abandonment.'" (quoting *W.L. Gore & Associates, Inc. v. Oak Materials Group, Inc.*, 424 F. Supp. 700, 702 (D. Del. 1976))). But this does not mean, as Licensor Defendants seem to suggest, that Choon's disclaimer of claim 8 of the '420 Patent made that invention *prior art* to the invention of claim 9 of the (earlier) '565 Patent. (*See* Licensor Defs.' Mot. Ex. E, '565 Claim Chart at 1.) At oral argument, counsel for Licensor Defendants could provide no support whatsoever for this argument. And Federal Circuit case law suggests the contrary. It is clear that the effect of Choon's disclaimer is that the claim never existed in the first place, i.e., that this Court should view the '420 Patent as having issued without claim 8. *See In re Yamazaki*, 702 F.3d 1327, 1332 (Fed. Cir. 2012) ("[B]ecause the disclaimer of any issued claim

28

inheres in the original patent, we have interpreted § 253 to mean that after such disclaimer the patent is treated as though the disclaimed claims never existed." (internal quotation marks omitted)); *accord Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1383 (Fed. Cir. 1998); *Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996).

In short, it is not implausible that claim 9 is patentably distinct from claims 1, 10, and 11, and the Licensor Defendants' reliance on Choon's disclaimer of claim 8 is misplaced, at least at this stage of the proceedings. Accordingly, the Court will not dismiss Counts I, II, and III of the Complaint to the extent they assert infringement of claim 9 of the '565 Patent.

**E.**

Licensor Defendants also seek to dismiss Counts IV, V, and VI of the Complaint, counts asserting infringement based on claims 1–7 and 9–16 of the '420 Patent. (*See* Licensor Defs.' Mot. at 15–18, Ex. F, '424 Patent Claim Chart.) Indeed, Licensor Defendants assert that Choon has conceded that claims 1–7 and 9–16 of the '420 Patent are not patentably distinct from the claims of the '565 Patent adjudged by the PTAB. (Licensor Defs.' Mot. at 16.) In particular, they point out that during prosecution of the '420 Patent, the patent office rejected the claims of the '420 Patent as patentably indistinct from the claims of the '565 Patent. (*Id.*) As a result, the Licensor Defendants stress, Choon filed a terminal disclaimer (i.e., agreed that the term of the '420 Patent would not extend beyond the term of the '565 Patent) instead of attempting to distinguish the claims of the two patents. (*Id.*)

This argument does not persuade. Licensor Defendants do not point to any authority providing that a patent applicant's decision to file a terminal disclaimer in response to a double-patenting rejection is equivalent to a concession that the two sets of claims are not distinct. And there is ample case law suggesting the contrary. *Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*,

29

473 F.3d 1173, 1184 (Fed. Cir. 2006) ("The inventors responded to the obviousness-type double patenting rejection by filing a terminal disclaimer. BioGenex argues that the filing of the terminal disclaimer represents an admission by the inventors 'equating all claims of the ′535 application to all claims of the ′861 Patent.' . . . We disagree."); *Wooster Brush Co. v. Newell Operating Co.*, 250 F.3d 756 (table), 2000 WL 748074, at *5 (Fed. Cir. 2000) ("There are many reasons to file a terminal disclaimer, and it is not up to us to say, in this case where no reason was given, that Sekar filed such a disclaimer because he concluded that the patent would not otherwise issue, rather than because he was in financial difficulty (as he admitted), and could not afford to argue further with the Patent Office, or wait longer for his patent."); *Quad Envtl. Technologies Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991) ("In legal principle, the filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection."). Without any authority for the adverse inference against Choon that Licensor Defendants ask the Court to draw, the Court declines to draw it.

Licensor Defendants also assert that the claims of the '420 Patent are merely "obvious modifications" of the claims adjudged by the PTAB. (Licensor Defs.' Mot. at 18, Ex. F, '424 Patent Claim Chart.) The Court, at least under the plausibility standard that governs Licensor Defendants' motion, disagrees.

Licensor Defendants assert that claims 1, 6, and 16 of the '420 Patent are not patentably distinct from PTAB-adjudged claims 1 and 6 of the '565 Patent. As noted, claim 1 of the '565 Patent is a kit that includes a base, one or more pin bars supported on the base, the pin bar(s) including two or more pins, and each pin having certain structural details including an opening on a front side. (*See* '565 Patent col. 5 ll. 10–16.) Claim 6 of the '565 Patent is the "kit as recited

in claim 1, wherein the base comprises a plurality of bases for securing a plurality of pin bars in a desired relative special orientation for forming the series of links in a desired pattern." ('565 Patent col. 5 ll. 32–35.) Notably, each of claim 1 and 6 would teach one skilled in the art a kit that includes a base, a pin bar, and pins on the pin bar—three different structural elements.

In contrast, each of claims 1, 6, and 16 of the '420 Patent claim an apparatus with pins "supported on" or "extending . . . from" a base. Claim 1 is "[a] device for creating an item consisting of a series of links, the device comprising: a base; and *a plurality of pins supported on the base*, . . . ." ('424 Patent col. 5 ll. 18–21 (emphasis added).) Claim 6 is a kit with "a plurality of pins . . . wherein the plurality of pins comprises rows of offset pins spaced apart and *extending upward from a base*." ('424 Patent col. 5 ll. 41–46 (emphasis added).) And claim 16 is "[a] device" including "a base; and *a plurality of pins supported on the base*, . . . ." ('424 Patent col. 5 ll. 37–40 (emphasis added).)

Given that claims 1 and 6 of the '565 Patent would provide to one skilled in the art a kit comprised of (1) a base, (2) a pin bar, and (3) pins, it is plausible that the inventions of claims 1, 6, and 16 of the '420 Patent would not be obvious to one having ordinary skill in the art: the inventions of those three claims do not include pins on a pin bar but instead pins "supported on" or "extending . . . from" a base.

As for claim 14 of the '420 Patent, Licensor Defendants assert that it is implausible that it is patentably distinct from claim 1 of the '565 Patent. (*See* Licensor Defs.' Mot. Ex. F, '420 Claim Chart at 3.) The Court again disagrees. Claim 14 of the '420 Patent is a "method for assembling a kit for creating a linked item," including the steps of "providing a plurality of connectors for holding links together once a desired pattern is completed." ('424 Patent col. 6 ll. 30–33.) The kit of claim 1 of the '565 Patent does not include any connectors. (*See* '565 Patent

col. 5, ll. 10–16.) And, for reasons already provided with respect to claim 9 of the '565 Patent, it is plausible that it would be unobvious to one skilled in the art to add a clip or connector to the kit of claim 1.

Claims 1, 6, 14, and 16 are the only independent claims of the '420 Patent. All other claims are dependent and therefore add limitations to those claims. Thus, as it plausible that claims 1, 6, 14, and 16 of the '420 Patent are patentably distinct from the PTAB-adjudged claims of the '565 Patent, it follows that it is plausible that all claims of the '420 Patent are patentably distinct from the adjudged claims.

## IV.

For the foregoing reasons, the Court DENIES Defendants Zenacon, LLC, Steven Verona, and Geek Baby, LLC's Motion to Dismiss Counts I–VI of Plaintiff's Fourth Amended Complaint. (Dkt. 89.)

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  February 9, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 9, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson

32