UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHOON'S DESIGN, LLC,

      Plaintiff and Counter-Defendant,

v.

IDEA VILLAGE PRODUCTS CORP.,

      Defendant and Counter-Claimant.

Case No. 2:13-cv-13568
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [187]

---

Plaintiff Choon's Design, LLC (Choon) makes the well-known Rainbow Loom, a device that helps link together small elastic bands to create bracelets or other wearable items. Choon also holds two patents directed to these types of looms: United States Patent No. 8,485,565 ('565 patent) and United States Patent No. 8,684,420 ('420 patent). Choon alleges that by selling and advertising a product called the FunLoom, Defendant IdeaVillage Products Corporation (IdeaVillage) has infringed claims 9 and 14 of the '565 patent and claim 3 of the '420 patent.

IdeaVillage seeks summary judgment. (R. 187.) In particular, it argues that the FunLoom does not infringe claims 9 or 14 of the '565 patent because this Court limited the scope of those claims to devices with two detachable parts (pin bars and bases) and the FunLoom is a one-piece loom with no detachable parts. As for claim 3 of the '420 patent, which this Court construed to cover one-piece looms, IdeaVillage argues that the claim is invalid as anticipated by the FunLoom or because it lacks written-description support.

This Court studied the parties' briefs and, on July 7, 2017, heard oral argument. For the reasons set forth below, the FunLoom does not infringe claims 9 or 14 of the '565 patent as a

matter of law, but a jury must resolve factual disputes that are material to the validity of claim 3 of the '420 patent.

## I.

## A.

The application for what matured as the '565 patent was filed on September 8, 2011. (*See* '565 patent.) That application, however, claims priority to U.S. Provisional Application No. 61/410,399 filed on November 5, 2010 (the "Provisional Application"). ('565 Patent, col. 1, ll. 5–6.)

In claim 9 of the '565 patent, Choon claimed exclusive rights to "[a] kit for creating an item consisting of a series of links, the device comprising:"

a base; []

*at least one pin bar supported on the base*, the pin bar including a plurality of pins each including a top flared portion for holding a link in a desired orientation and an opening on a front side of each of the plurality of pins[; and]

a clip for securing ends of the series of links together.

('565 patent col. 5, ll. 10–16 (emphasis added); '565 patent col. 6, ll. 1–2.)

Although claim 9's references to "a base," a "pin bar," "a plurality of pins," and "a clip" are rather abstract, the '565 patent provides concrete examples of these claim limitations. (A "limitation," as its name suggests, limits the scope of a claim because a product only falls within the claim's scope if it has the limitation or an equivalent.) In particular, the following picture shows example bases (12), example pin bars (14) mounted on three of the bases, example pins (26), and an example clip (18):



('565 patent Fig. 1.) The '565 patent also provides an example of the claim limitation "at least one pin bar supported on the base":



('565 patent Figs. 5A, 5B.) In the above illustration, the bottom of the pins have openings (30) that fit snuggly on cylinders (28) such that the pin bar can be mounted on the base (Fig. 5B).

In a prior opinion, this Court held that the "at least one pin bar supported on the base" limitation of claim 9 meant "at least one pin bar *attached to but detachable from* the base" and further defined "detachable" as "capable of being separated without damage." *Choon's Design, LLC v. Idea Vill. Prod. Corp.*, 125 F. Supp. 3d 630, 648 (E.D. Mich. 2015) (emphasis added), *reconsideration denied*, 2016 WL 8261729 (E.D. Mich. Jan. 7, 2016).[1]

---

[1] Although Choon also asserts infringement of claim 14 of the '565 patent, the parties' make the same summary-judgment arguments about claim 14 and claim 9. As such, the Court only discusses claim 9 in this opinion with the understanding that its analysis applies with equal force to claim 14.

**B.**

The application for what ultimately became the '420 patent was filed on July 26, 2013. (*See* '420 patent.) But that application is a "continuation" of an application (App. No. 13/938,717) that, in turn, is a continuation of the application for the '565 patent (App. No. 13/227,638). ('420 patent col. 1, ll. 5–9.) As noted, the application for the '565 patent claims as its priority date the filing date of the Provisional Application. As such, the '420 patent also claims that priority date, i.e., November 5, 2010. (*See* '420 patent col. 1, ll. 8–9.)

Claim 3 of the '420 patent is similar to claim 9 of the '565 patent, but it does not include a pin bar limitation. To be more specific, claim 3 defines the following exclusive territory:

> A device for creating an item consisting of a series of links, the device comprising:
>
> a base; and
>
> *a plurality of pins supported on the base*, wherein each of the plurality of pins includes a top portion for holding a link in a desired orientation and an opening on at least one side of each of the plurality of pins, wherein the plurality of pins comprises rows of offset pins spaced apart and extending upward from the base[,] [and wherein the top portion comprises a flared portion for holding a link in place on at least one of the plurality of pins].

('420 patent col. 5, ll. 18–33 (emphasis added).)

In a prior opinion, this Court construed the "a plurality of pins supported on the base" limitation of claim 3 to mean "a plurality of pins *integral with or attached to* the base." *Choon's*, 125 F. Supp. 3d at 648 (emphasis added). In other words, while the scope of claim 9 of the '565 patent is limited to products with pin bars that are not permanently affixed to bases, the scope of claim 3 of the '420 patent includes devices with pins permanently affixed to a base.

**C.**

The allegedly infringing product in this lawsuit is IdeaVillage's FunLoom. The record reflects that the FunLoom was sold at least by June 2013 (*see* R. 81, PID 1691, 1723)—before the date that the application for the '420 patent was filed (July 26, 2013) but after the '420 patent's claimed priority date (November 5, 2010).

The FunLoom looks like this:



(R.114, PID 2933; R. 156, PID 5424.) As these pictures suggest, the FunLoom is a single piece of molded plastic with no detachable pin bars and no detachable pins.

**D.**

Now pending for resolution is IdeaVillage's motion for summary judgment. As to the '565 patent, IdeaVillage argues that no reasonable jury could find that the FunLoom infringes claim 9 or claim 14. As to the '420 patent, instead of arguing non-infringement, IdeaVillage argues that every reasonable jury would find claim 3 of that patent to be invalid.

The Court begins with the '565 patent.

**II.**

A product infringes a claim of a patent only if "every limitation recited in [the] properly construed claim is found in the accused device either literally or under the doctrine of equivalents." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015). Infringement is a question of fact. *Id.* Thus, IdeaVillage is entitled to summary

judgment that it does not infringe claim 9 of the '565 patent only if no reasonable jury could find that every one of claim 9's limitations is present in the FunLoom (either literally or equivalently). *See* Fed. R. Civ. P. 56(a); *Advanced Steel*, 808 F.3d at 1317. The same holds for claim 14. In making this determination about what a reasonable jury could find, the Court views the evidence in the light most favorable to the non-moving party, here, Choon. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A.

IdeaVillage argues that because of the FunLoom's one-piece construction, the "at least one pin bar supported on the base" limitation of claim 9 is not literally present in the FunLoom. (R. 187, PID 6315.)

The Court agrees. As noted, this Court has construed that limitation to mean "at least one pin bar attached to but detachable from the base." Thus, a product literally infringes claim 9 only if it has a part that can be detached from another part. As it is plain that the one-piece FunLoom has no such part, the FunLoom does not fall within the literal scope of claim 9. Indeed, Choon has apparently conceded that, under this Court's claim construction, the FunLoom does not literally infringe claim 9. (*See* R. 187, PID 6549, 6553–54.)

## B.

But, says Choon, that is not the end of the story. According to Choon, while the FunLoom does not have "at least one pin bar attached to but detachable from the base," it has structure that is equivalent to that limitation of claim 9. In other words, Choon relies on the doctrine of equivalents.

The doctrine of equivalents prevents a company from avoiding infringement by making a product that differs—but only insubstantially—from the invention set out in a claim. *See Sage*

*Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997). To be sure, a company has the right to rely on the words of a claim to design a product that avoids infringement. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) (noting the "definitional and public-notice functions of the statutory claiming requirement"); *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1416 (Fed. Cir. 2000) ("Because this issued patent contains clear structural limitations, the public has a right to rely on those limits in conducting its business activities."). But if claims were strictly limited to their literal terms, "[u]nimportant and insubstantial substitutes for certain [claim] elements could defeat the patent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731–32 (2002) ("[T]he nature of language makes it impossible to capture the essence of a thing in a patent application."). For example, if a claim had several limitations, one of which was "a three-inch screw," patent law recognizes it would be unfair to allow a company to avoid infringement by making a product that met all of the claim's limitations except that it used a three-and-a-quarter-inch screw (assuming that the extra quarter inch is unimportant). The doctrine of equivalents aims to prevent that and like results.

For Choon to ultimately succeed under the doctrine of equivalents, it will have to persuade a jury that the differences between claim 9 and the FunLoom are "insubstantial." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). One way to make this showing, and it is the method that both sides say applies to this case (*see* R. 187, PID 6312; R. 192, PID 6827), is for Choon to show that a portion of the FunLoom "performs substantially the same function in substantially the same way with substantially the same result" as the "at least one pin bar attached to but detachable from the base" limitation. *See Crown*, 559

F.3d at 1312 (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39–40 (1997)). Choon avoids summary judgment only if a reasonable jury could find equivalency of function, way, *and* result. *See Advanced Steel*, 808 F.3d at 1320.

The Court first focuses on whether a reasonable jury could find equivalency of function.

Choon's expert says, "The function of the base is to maintain the at least one pin bar and its pins in an upright orientation. It could support one pin bar, or it could support multiple pin bars. The FunLoom performs substantially the same function in that it has a base that maintains at least one pin bar and its pins in an upright orientation." (R. 191, PID 6714.)

But if the function of the "at least one pin bar attached to but detachable from the base" limitation was solely to maintain at least one pin bar in an upright orientation, then why would the pin bars be detachable from the base? Choon's limited function ignores this Court's prior holding that the "at least one pin bar" of claim 9 is not supported on "the base" in just any manner, but in a detachable manner. Indeed, the '565 patent repeatedly mentions benefits of having pin bars that can be detached from the bases. For example, the Abstract states, "[t]he base and pin bars may be assembled in various combination and orientations to provide endless variation of completed link orientations." ('565 patent Abstract.) Accordingly, while *one* function of the "at least one pin bar attached to but detachable from the base" limitation is, as Choon says, to "maintain the at least one pin bar and its pins in an upright orientation," every reasonable jury would find that there are other key functions of a *detachable*-pin-bar-and-base structure. Thus, the mere fact that the FunLoom performs the function of maintaining a row of pins in an upright orientation is not enough to establish functional equivalence. The Court must consider other key functions of the "at least one pin bar attached to but detachable from the base" limitation. *See Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.* (*Vehicular II*), 212 F.3d 1377,

1381–82 (Fed. Cir. 2000) (indicating that under function-way-result test, accused device must perform all "key" functions of the claim limitation); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.* (*Vehicular I*), 141 F.3d 1084, 1089–90 (Fed. Cir. 1998) (finding that district court erred in awarding a preliminary injunction based on doctrine of equivalents where district court, although finding equivalency of some functions, did not consider one key function that the accused device could not perform).

To this end, Choon's expert says, "[i]f there is any benefit to the detachability, it would be to allow additional pin bars to be attached to the base." (R. 191, PID 6715 (emphasis omitted).) In other words, Choon says that if there is any other function of the "at least one pin bar attached to but detachable from the base" limitation besides maintaining a row of pins in an upright orientation, it is simply the function of adding more pin bars. This "expandability" function has support in the '565 patent. Indeed, at multiple points, the patent suggests that one reason for pin bars to be detachably supported on bases is so that more pin bars can be added. For example,

> The base . . . may be added to a side of a group of pin bars to add additional pin bars beyond the three provided for by one base 12. . . . As is appreciated, the extent to which additional bases and pin bars 14 can be added and the configurations possible are limited only b[y] the desire of the user of the disclosed kit. The addition of pin bars 14 provides for more unique and intricate designs limited only by the imagination of the user of the kit.

('565 patent col. 3, ll. 46–61.) Given Choon's expert's testimony and the support from the patent specification, a reasonable jury could find that another key function of the detachable-pin-bar-and-base structure of claim 9 is to allow expansion through the addition of pin bars.

But granting Choon that two key functions of the "at least one pin bar attached to but detachable from the base" limitation are maintaining a row of pins in an upright position and expansion, Choon still overlooks a third key function of that limitation. IdeaVillage's expert

points out that the '565 patent "touts that detachability and reconfigurability between bases and pin bars are key attributes of the invention" (R. 187, PID 6444) and that "[p]in bars installed on bases in the '565 Patent can be assembled . . . resulting in pins in a variety of relationships" (R. 187, PID 6446). In its brief, IdeaVillage makes the point sharper: "the '565 Patent has pins that can be arranged in two different ways relative to one another, either a parallel (i.e., aligned) arrangement or an offset (i.e., staggered) arrangement through the separability of the base and the pin bar(s)." (R. 187, PID 6317.) This is true. And the Court notes that the '565 patent, at multiple points, suggests that the ability to reconfigure pin bars is an important function of the detachable-pin-bar-and-base structure of claim 9. For example, "[t]he base and pin bars may be assembled in various combination and orientations to provide endless variation of completed link orientations." ('565 patent col. 1, ll. 38–40.) Also: "[i]n this example, a center pin bar 14 is incremented one up from the two outermost pin bars 14. This alignment provides for creation of a desired linked item." ('565 patent col. 2, ll. 49–51.) Indeed, Choon has previously conceded that "reconfiguration is an important feature of the '565 patent." (R. 163, PID 5762.) All of this leads to the conclusion that every reasonable jury would find that another key function of the "at least one pin bar attached to but detachable from the base" limitation is, as IdeaVillage asserts, to allow pin bars to be realigned.

This key function of the limitation "at least one pin bar attached to but detachable from the base" warrants summary judgment in favor of IdeaVillage. It is plain that the FunLoom, with its one-piece construction, has no ability to realign any pin bar or any pins. As such, no reasonable jury could find that the FunLoom performs all the key functions of the limitation "at least one pin bar attached to but detachable from the base." *See Vehicular I*, 141 F.3d at 1089–90; *Vehicular II*, 212 F.3d at 1381–82.

Choon resists this result by reminding the Court that claim 9 covers looms that have only a single pin bar and a single base. (R. 192, PID 6833.) Choon's point is that if a loom has only one pin bar, there is no ability for pin bars to be realigned with each other. Indeed, this Court previously found as much: "if a loom has only one pin bar, there is no practical reason to detach the pin bar from the base: there is no second pin bar to which the one pin bar can be realigned[.]" *Choon's Design, LLC v. Idea Vill. Prod. Corp.*, No. 2:13-CV-13568, 2016 WL 8261729, at *2 (E.D. Mich. Jan. 7, 2016). Because claim 9 includes looms that cannot be reconfigured, Choon concludes that a reasonable jury could find that realigning pin bars is not a function (or not a key function) of the "at least one pin bar attached to but detachable from the base" limitation.

But simply because the scope of claim 9 is broad enough to include looms that do not have pin bars that can be realigned, does not preclude realignment from being a key function of the detachable-pin-bar-and-base structure of claim 9. That claim undoubtedly includes looms with multiple pin bars (indeed, the invention as sold has three), and so the function of the "at least one pin bar attached to but detachable from the base" limitation must be assessed in view of those looms as well. Choon essentially asks a jury to focus on only part of what claim 9 covers (single pin bar looms) in determining the function of the limitation in question while ignoring the much more significant remainder (multiple pin bar looms). The Court does not believe that a reasonable jury would do so.

In finding that realignment is a key function of the "at least one pin bar attached to but detachable from the base" limitation, the Court has not ignored the teachings of Choon's primary case on the issue of equivalence: *Toro Co. v. White Consol. Indus., Inc.* (*Toro II*), 266 F.3d 1367 (Fed. Cir. 2001). (*See* R. 192, PID 6834–35.)

Toro's patent was directed to a leaf vacuum that could be converted to a blower. *See Toro II*, 266 F.3d at 1368. Like existing vacuum-blowers, Toro's invention required a user to place a "cover" over the air inlet when the tool was in blower mode. *See id.*; *Toro Co. v. White Consol. Indus., Inc.* (*Toro I*), 199 F.3d 1295, 1297 (Fed. Cir. 1999). But unlike existing vacuum-blowers, the inside of Toro's cover included a "restriction ring." *Toro II*, 266 F.3d at 1368. This meant that when a user put on the cover, the ring was placed in the inlet. *See id.* This narrowed the inlet, which, in turn, increased the power of the blower. *See id.* The literal language of Toro's claims covered only those vacuum-blowers that had a restriction ring "permanent[ly]" attached to the cover. 199 F.3d at 1301. Yet the vacuum-blower Toro accused of infringement had a restriction ring separate from the cover: the user of the accused vacuum-blower had to first put the ring in the air inlet and then place the cover on top. 266 F.3d at 1369. Toro thus resorted to the doctrine of equivalents. *See id.*

In performing the function-way-result test, the district court found that the accused device did not perform a "critical" function of Toro's claimed invention. The court explained:

> As the Federal Circuit repeatedly emphasized in construing the disputed claims [in *Toro I*], a critical function of the air inlet cover claimed in [Toro's] Patent is to automatically insert and remove the restriction ring. However, a visual inspection of the accused devices in this case reveals that no component (or combination of components) in the [accused] products performs this automatic placement function. With the [accused] products, the operator must manually insert the restriction ring and the cover may be opened or closed with or without the ring. Indeed, it is possible for the operator to leave the ring out entirely while using the device as a blower.

*The Toro Co. v. White Consol. Indus., Inc.*, No. CIV4-95-656, 2000 WL 34494818, at *3 (D. Minn. Aug. 9, 2000). The district court thus found that no reasonable jury could find that the accused device's two-part ring and cover performed the same critical functions as the claimed one-part ring and cover.

The Federal Circuit disagreed. In particular, the Court held that the automatic placement function was not a critical function of the claimed cover and that the district court had impermissibly read an ancillary function into the claim:

> In this case, the [claimed] structural limitation was a unitary cover and ring. The primary function or objective of the cover, as described in the specification and recited in claim 16, is to cover the air inlet of the vacuum-blower (to keep fingers and clothes from entering the impeller) and permit the passage of air. While this structure could have a variety of other functions . . . these functions do not become part of the claimed structure unless claimed as such.

*Toro II*, 266 F.3d at 1371. The Court continued, "Neither [the] patent's specification nor this court's [prior] claim interpretation . . . make the inherent function of automatic placement a *key* objective of this invention. Rather, the specification mentions *in passing* the automatic placement feature among other functions of the cover. Thus, on this record, a genuine issue of material fact remains as to whether [the accused] vacuum-blower cover performs substantially the same overall function as the cover claimed by the . . . patent." *Id.* at 1372 (emphases added).

This situation is distinguishable. In *Toro*, the patent "mention[ed] in passing" a function that the district court mistakenly believed was "key." Here, the ability of the pin bars to be detached and realigned is not some minor feature of the invention of the '565 patent. As already noted, the patent repeatedly states that the detachable pin bars and bases allow the user to reconfigure the loom to create different wearable items. Indeed, in prior opinions this Court stated, "the '565 patent discusses the virtues of configurable pin bars and bases, and the Court cannot say that, given the repeated emphasis on the feature, it is merely an 'immaterial detail[] of a broader invention.'" *Choon's Design, LLC v. Idea Vill. Prod. Corp.*, 125 F. Supp. 3d 630, 642 (E.D. Mich. 2015) (quoting *Toro I*, 199 F.3d at 1302). Instead, this Court said, "one skilled in the art would understand it to be an 'important' part of what Ng invented." *Id.* Indeed, as noted, Choon itself acknowledges that reconfiguration is an "important" feature of the invention. Thus,

unlike *Toro*, the realignment function is not a non-critical function that the patent "mention[ed] in passing."

Because every reasonable jury would find that realignment is a key function of the "at least one pin bar attached to but detachable from the base" limitation, instructive is a case *Toro* distinguished: *Vehicular Technologies v. Titan Wheel International*. The claim limitation at issue in *Vehicular* was a pin-spring-and-spring assembly for use in a car's locking differential. *Vehicular II*, 212 F.3d at 1379. The accused device instead used a pin-spring-and-plug assembly, *id.* at 1379, i.e., the alleged infringer had designed around the patent by replacing "the two spring assembly with a single spring and a plug stuck in one end of the spring," *Vehicular I*, 141 F.3d at 1087. There were several benefits of the pin-spring-and-spring assembly described in the patent's written description. *See Vehicular II*, 212 F.3d 1380. One was that if one spring broke, the other would continue to provide resilient force, i.e., the second spring increased reliability. *See Vehicular II*, 212 F.3d at 1381–82; *Vehicular I*, 141 F.3d at 1090. The accused device, with only one spring and a plug, could not perform this "reliability" function. The doctrine-of-equivalents question thus turned on whether the "reliability" function was "key." *See Vehicular II*, 212 F.3d at 1382. Although testimony suggested that those skilled in the art may not find the reliability function important, the Federal Circuit found that this testimony did not "trump the clear disclosures and assertions" in the written description. *See id.* at 1382. In particular, the written description provided that "[a]nother objective" of the invention was "reliability" and also provided that the invention would "continue to function" if one spring broke. *Id.* Here, not unlike the patent at issue in *Vehicular*, the '565 patent's written description sets forth a key function of the limitation in question: realignment. As "this function is 'key,' an

accused device which does not perform this central function," e.g., the Fun Loom, "could rarely, if ever, be considered to be insubstantially changed from the claimed invention." *Id.* at 1382.

In sum, every reasonable jury would find that one key function of the limitation "at least one pin bar attached to but detachable from the base" is to allow pin bars to be realigned. And every reasonable jury would find that the FunLoom's one-piece construction precludes it from performing this function. IdeaVillage is thus entitled to summary judgment that the FunLoom does not infringe claim 9. *See Advanced Steel*, 808 F.3d at 1320 ("To survive summary judgment of noninfringement under the doctrine of equivalents, Advanced Steel had to present evidence of equivalence under each prong of the function-way-result test.").[2]

### III.

Turning to the '420 patent, IdeaVillage asserts that claim 3 is invalid. (*See* R. 187, PID 6320.) The argument comes in two closely-related forms.

### A.

The first form has several layers. Start with the fact that Choon claims that the FunLoom literally infringes claim 3 of the '420 patent. (*See* R. 187, PID 6561, 6583–84.) If this is so, the FunLoom has every limitation of claim 3. And so, says IdeaVillage, if the FunLoom predated the '420 patent, the invention of claim 3 of the '420 patent is not novel. *See Los Angeles Biomedical Research Inst. at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*, 849 F.3d 1049, 1069 (Fed. Cir. 2017) (recalling the long-standing axiom, "that which infringes if later anticipates if earlier").

---

[2] Even if realignment is not a key function of the limitation "at least one pin bar attached to but detachable from the base," the *way* the FunLoom performs the two functions that Choon has identified—maintaining a row of pins upright and expansion—might be different from the way the device of claim 9 performs those two functions. Given this Court's holding that the FunLoom does not perform all key functions of the "at least one pin bar attached to but detachable from the base" limitation, the Court does not address this issue. *See Advanced Steel*, 808 F.3d at 1320.

IdeaVillage's argument thus leads to a dispute over the priority date of claim 3 of the '420 patent. The '420 patent was filed as a continuation of a continuation of the application for the '565 patent, which, in turn, claims priority to the Provisional Application. Given this, Choon says that claim 3 of the '420 patent has a priority date corresponding to when the Provisional Application was filed, November 5, 2010. (R. 192, PID 6845); *see also* 35 U.S.C. § 120 (providing criteria for a continuation application to claim filing date of parent application). IdeaVillage disagrees, arguing that claim 3's earliest priority date is the date that the application for the '420 patent was actually filed, July 26, 2013. (R. 187, PID 6324.) The parties do not dispute that the FunLoom was on sale by June 2013. Thus, if IdeaVillage is correct about claim 3's priority date, then claim 3 would not be novel (again, assuming the FunLoom literally infringes claim 3).

The dispute over the priority date of claim 3 of the '420 patent turns on the written description requirement of 35 U.S.C. § 112(a): "in order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1269 (Fed. Cir. 2010). To satisfy § 112(a), the written description of the parent application must have disclosed the later-claimed invention. In particular, "the claims of the later-filed application must be supported by the written description in the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'" *Anascape, Ltd. v. Nintendo of Am. Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) (quoting *Lockwood*, 107 F.3d at 1572); *see also Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) ("[T]he test requires an objective inquiry into the four corners of

the specification from the perspective of a person of ordinary skill in the art . . . [to] show that the inventor actually invented the invention claimed."). "A disclosure in a parent application that merely renders the later-claimed invention obvious is not sufficient to meet the written description requirement; the disclosure must describe the claimed invention with all its limitations." *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998).

Essentially, then, the dispute over the validity of claim 3 of the '420 patent reduces to whether a person skilled in the art would find that the written description of the Provisional Application describes all the limitations of the invention of claim 3.

But three additional points help to refine the inquiry. First, because the application for the '565 patent was filed on September 8, 2011, and because the FunLoom was not sold until much later, IdeaVillage's anticipation argument fails if the priority date of claim 3 of the '420 patent is the date the application for the '565 patent was filed. In other words, the Court can set aside the Provisional Application and focus on the written description of the September 8, 2011 application for the '565 patent ('565 Application).[3]

Second, IdeaVillage moves for summary judgment and the question of whether a parent application adequately discloses a later-filed claim is one of fact. *Bradford*, 603 F.3d at 1268.

And third, claim 3 of the '420 patent is presumed valid, so if there were a trial, IdeaVillage would have the burden of persuading the jury, by clear and convincing evidence, that claim 3 is invalid. *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327, 1329 (Fed. Cir. 2008) (clarifying burden-shifting framework of *PowerOasis, Inc. v. T–Mobile USA, Inc.*,

---

[3] Proceeding this way does not weaken Choon's argument either. Although Choon asserts that the priority date of the '420 patent is earlier than September 8, 2011, the '565 Application is in the chain of applications leading back to the Provisional Application. So if the '565 Application does not adequately disclose the invention of claim 3, then it would not matter that the Provisional Application did. *See Bradford*, 603 F.3d at 1269.

522 F.3d 1299 (Fed. Cir. 2008)). That burden never shifts. *Id.* But here, IdeaVillage has discharged its initial summary-judgment burden because it has shown that the FunLoom was sold before the application for the '420 patent was actually filed, and because Choon does not dispute that the FunLoom discloses all the limitations of claim 3. *See Tech. Licensing*, 545 F.3d at 1327; *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 871 (Fed. Cir. 2010). In other words, the burden of production has shifted to Choon to show that a reasonable jury might not find (by clear and convincing evidence) that the FunLoom anticipates claim 3. *See Positive Techs. Inc. v. Sony Elecs. Inc.*, No. 11-02226 SI, 2012 WL 162707, at \*5 (N.D. Cal. Jan. 19, 2012) (applying *Tech. Licensing* in summary-judgment context). It can do this by producing sufficient evidence that claim 3's priority date is earlier than the date the FunLoom was first sold, i.e., that a patent application filed before the FunLoom's sale discloses the invention of claim 3. *See Tech. Licensing*, 545 F.3d at 1327; *Positive Techs.*, 2012 WL 162707, at \*5. If Choon does so, then the case should proceed to a jury because IdeaVillage would not be able to show that every reasonable jury would find that the FunLoom anticipates claim 3. *See Tech. Licensing*, 545 F.3d at 1328; *Positive Techs.*, 2012 WL 162707, at \*7.[4]

With those three points of refinement, the question before the Court is this: has Choon shown that a reasonable jury might not find, by clear and convincing evidence, that the '565 Application fails to sufficiently describe the invention of claim 3 of the '420 patent? "Sufficiently describe" in this context means a description that satisfies § 112(a), i.e., that one

---

[4] Arguably, IdeaVillage's initial summary-judgment burden should be higher because it seeks summary judgment on an issue that it has the burden of proof at trial. *See* Charles Alan Wright, et al., 10A Fed. Prac. & Proc. § 2727.1 (4th ed.). In particular, it would seem that IdeaVillage's initial burden should include showing why the parent application does not contain adequate disclosure of the later-filed claim. Because, as will be explained, there is sufficient evidence that claim 3's priority date is earlier than the date the FunLoom was first sold, the Court will follow the approach of *Tech. Licensing* and *Positive Techs.*

skilled in the art, upon reading the '565 Application, would clearly conclude that Cheong Choon Ng had invented what was later set forth in claim 3. *See Anascape*, 601 F.3d at 1335.

IdeaVillage argues that the '565 Application does not sufficiently describe the invention of claim 3 of the '420 patent for two closely related reasons. The first is that, according to IdeaVillage, claim 3 covers devices where pins are "directly" attached to the base, but the written description of the '565 Application only discloses pins that are indirectly attached to a base via a pin bar. (*See* R. 187, PID 6320, 6322.) And, says IdeaVillage, this Court has "*twice* expressly ruled that the '565 Patent (and the Provisional) do not disclose or support any embodiment with pins directly attached to a base without a pin bar." (R. 187, PID 6324.) IdeaVillage's related argument is that claim 3 covers devices where the pins and bases are integrated, i.e., one-piece looms, but the written description of the '565 Application only discloses multi-piece looms. (*See* R. 187, PID 6320, 6321, 6326; R. 196, PID 7428.) And, says IdeaVillage, this Court held as much in its claim-construction opinion. (R. 187, PID 6321.)

There is support for IdeaVillage's argument. In commenting on the written description of the '565 patent—which is the same as that of the '565 Application—this Court stated, "*every* single embodiment disclosed in the written description, and *every* single drawing of the pin bars and bases, shows the pin bars and bases as separate pieces that can be attached and detached." *Choon's Design*, 125 F. Supp. 3d at 640. Further, in denying Choon's motion for reconsideration, this Court remarked, "the language of the '565 patent indicates that all that was invented was a device with detachable pin bars and bases." *Choon's Design*, 2016 WL 8261729, at *2. And in referencing the '420 patent's written description—which, save for two sentence of the abstract, is the same as that of the '565 Application—this Court stated, "[t]he '420 patent

specification provides not even one example of 'pins supported on the base' apart from the use of a pin bar." 125 F. Supp. 3d at 645.[5]

The purpose of these statements, however, was not to establish that there was no disclosure in the written description of the '565 Application for an integrated pin-base loom. The purpose was to emphasize that the '565 Application never disclosed integrated bases and pin *bars*. Indeed, this Court's claim-construction opinion stated, "the Court's central reasoning . . . regarding the '565 patent—the specification's exclusive discussion of *pin bars* that detach from bases and its repeated stressing of that feature—applies with much less force to the '420 patent: the claim language simply does not involve pin bars." 125 F. Supp. 3d at 645.

In fact, not only did the Court not hold that there was no disclosure in the written description of the '565 Application for an integrated pin-base loom, it suggested just the opposite. In particular, this Court stated: "the written description of the '420 patent . . . discloses pins as an integrated part of a larger structure: 'The pin bar 14 is an integral structure having the plurality of pins 28 defined in a single row.'" 125 F. Supp. 3d at 646 (quoting '420 patent col. 3, ll. 9–10). This Court found further support for a pin integrated with a larger structure in the following drawing showing a pin (26) integrated with a "bar portion" (42):

---

[5] In relevant part, the Abstract of the '565 Application states, "The desired [spatial] orientation is dependent on the desired linked configuration of the completed article. *The base and pin bars* may be assembled in various combination and orientations to provide endless variation of completed link orientations. *Additional bases and pin bars can be to further expand possible completed article creation*." (*See* R. 191, PID 6806 (emphasis added).) In contrast, the Abstract of the '420 patent states, "The desired [spatial] orientation is dependent on the desired linked configuration of the completed article. *The pins may be assembled in various combination and orientations to provide endless variation of completed link orientations*." ('420 patent Abstract (emphasis added).)



FIG.6

('420 patent Fig. 6.) "This drawing," said the Court, "along with the description of a pin bar as an 'integral structure having . . . pins,' especially when contrasted against the disclosure regarding detachable pin bars and bases, *would lead a person having ordinary skill in the art to conclude that the phrase, 'a base; and a plurality of pins supported on the base' to encompass an integrated pin-base design*." 125 F. Supp. 3d at 646 (emphasis added). Thus, contrary to IdeaVillage's assertion, this Court suggested that one skilled in the art could find that these portions of the written description of the '420 patent—which appear verbatim in the '565 Application—described an integrated pin-base loom.

And there are two more facts indicating that a reasonable jury could find that one skilled in the art would conclude that the '565 Application discloses the invention of claim 3. For one, Figures 14A through 14C of the '565 Application show the creation of Brunnian links on a single pin bar, i.e., an integrated structure with pins. (R. 191, PID 6813.)[6] Second, as Choon points out, a patent examiner (reviewing an application for a patent covering the FunLoom) found that the '565 Application disclosed "pins . . . formed with the base." (R. 191, PID 6802.)

---

[6] Although the parties have only provided the version of the '565 Application that was published on May 10, 2012, the Court has verified, through a comparison of what is available on the USPTO website, that the published written description is the same as that of the '565 Application as filed on September 8, 2011. (Some claims, however, differ.)

Additionally, the Court must be mindful of the procedural posture of the case and the associated burdens. It is not for the Court to decide whether one skilled in the art would clearly conclude that the '565 Application describes the invention of claim 3 of the '420 patent. At this point in the litigation, the question is whether a reasonable jury *could* make that finding. Or, more accurately, Choon need only show that IdeaVillage might not be able to convince a reasonable jury—by clear and convincing evidence—that one skilled in the art would not clearly conclude that the '565 Application describes the invention of claim 3.

Accordingly, while close, a jury will determine whether the '565 Application describes the invention of claim 3 to the satisfaction of § 112(a). *See Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (explaining that while § 112(a) demands more than disclosure that makes the claimed invention obvious, it "does not demand . . . that the specification recite the claimed invention *in haec verba*.").

IdeaVillage resists this result by pointing to four cases where the earlier-filed application did not adequately describe the later-filed claim. (*See* R. 187, PID 6321, 6323, 6325; R. 196, PID 7428.) While the Court agrees that the § 112 disputes in these four cases are similar to the parties' dispute in this case, there are material differences. *See Anascape, Ltd. v. Nintendo of Am. Inc.*, 601 F.3d 1333, 1336–38 (Fed. Cir. 2010) (finding earlier application did not disclose later-claimed "multiple input members" where earlier application described "significant disadvantages" of multiple input members and patent holder modified written description by changing sixteen references to "single input member" to "at least one input member"); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307–08 (Fed. Cir. 2008) (finding that earlier application did not adequately disclose later-claimed interface on a user's laptop where "all" of the written-description support that the patent holder identified as disclosing an interface

on a laptop in fact showed the opposite); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158–59 (Fed. Cir. 1998) (finding that earlier application did not adequately disclose later-claimed "generic" shaped cup where earlier application stated that it was "extremely important" that the cup be conical); *Hamilton Beach Brands, Inc. v. Sunbeam Prod., Inc.*, No. 3:11-CV-345, 2012 WL 6562220, at *11 (E.D. Va. Aug. 13, 2012) (finding that it was "abundantly clear" that the earlier patent did not disclose the later-claimed catch-clip structure and that later-claimed catch placement on the side of the cooker was "conspicuously absent" from the earlier patent).

### B.

IdeaVillage alternatively argues that even if the FunLoom does not anticipate claim 3 of the '420 patent, claim 3 is invalid because the written-description of the *'420 patent* does not describe the invention of claim 3 in a manner that satisfies § 112(a). (R. 187, PID 6328–30).

There is a short answer to this argument: every statement or drawing in the '565 Application that this Court has identified as potentially disclosing the invention of claim 3 also appears in the written description for the '420 patent. So the prior analysis suffices to reject this alternative basis for summary judgment.

### IV.

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART IdeaVillage's Motion for Summary Judgment of Non-Infringement and Invalidity (R. 187). In particular, the FunLoom does not infringe claim 9 or claim 14 of the '565 patent as a matter of law, but a jury will decide whether claim 3 of the '420 patent is valid.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: September 29, 2017          U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2017.

s/Keisha Jackson
Case Manager